1   NOAH BRUMFIELD (SBN 203653)
    nbrumfield@whitecase.com
2   ELLEN MCGINTY KING (SBN 71490)
    eking@whitecase.com
3   MARISA ARMANINO (SBN 264907)
    marmanino@whitecase.com
4   **WHITE & CASE LLP**
    3000 El Camino Real
5   Five Palo Alto Square, 9th Floor
    Palo Alto, CA 94306
6   Telephone: (650) 213-0300
    Facsimile:  (650) 213-8158
7
    Attorneys for Defendant
8   ELLIE MAE, INC.

9

10                  UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

14   DOCMAGIC, INC., a California          Case No.  3:09-CV-4017-MHP
     corporation,
15                                         **DEFENDANT ELLIE MAE, INC.'S**
                        Plaintiff,         **ANSWER TO COMPLAINT AND FIRST**
16                                         **AMENDED COUNTERCLAIM**
             v.
17                                         **JURY TRIAL DEMANDED**
     ELLIE MAE, INC.,  a California
18   corporation [sic]; and DOES 1-10,
     inclusive,
19
                        Defendants.
20

21   AND RELATED COUNTERCLAIMS

22

23

24

25

26

27

28

Ellie Mae, Inc.'s Answer to Complaint & First Amended Counterclaim
Case No. 3:09-CV-4017-MHP

Defendant Ellie Mae, Inc. ("Ellie Mae"), by and through its undersigned counsel, hereby submits the following Answer to the Complaint (the "Complaint") filed by Plaintiff DocMagic, Inc. ("DocMagic"):

1.      Answering paragraph 1 of the Complaint, Ellie Mae admits that this Court has subject matter jurisdiction over actions that arise under the antitrust laws of the United States but denies that the Complaint pleads an action arising under those laws, or that DocMagic has proper standing to plead such an action, and therefore denies that supplemental jurisdiction exists over the state law claims asserted in the Complaint.

2.      Answering paragraph 2 of the Complaint, Ellie Mae admits that its corporate headquarters are located in Pleasanton, County of Alameda, California.  Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein.

3.      Answering paragraph 3 of the Complaint, Ellie Mae admits that it has its corporate headquarters in the Northern District of California and admits that venue in this district is facially proper based on the allegations in the Complaint.  Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 3 of the Complaint.

4.      Answering paragraph 4 of the Complaint, Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

5.      Answering paragraph 5 of the Complaint, Ellie Mae admits that it is a corporation organized and existing under the laws of the State of California with its principal place of business in the City of Pleasanton, County of Alameda, California.  Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein.

6.      Answering paragraph 6 of the Complaint, Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

7.      Answering paragraph 7 of the Complaint, Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

8.     Answering paragraph 8 of the Complaint, Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

9.     Answering paragraph 9 of the Complaint, Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

10.     Answering paragraph 10 of the Complaint, Ellie Mae admits the allegations in the first and second sentences and admits that it is an Internet platform provider for mortgage brokers, mortgage bankers and lenders through its ePASS Network technology.  Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 10 of the Complaint.

11.     Answering paragraph 11 of the Complaint, Ellie Mae denies that the ePASS Network provides an Internet platform that enables mortgage brokers to build and host individual consumer websites.   Ellie Mae admits the remaining allegations contained in paragraph 11 of the Complaint.

12.     Answering paragraph 12 of the Complaint, Ellie Mae admits that the ePASS Network takes the highly fragmented mortgage industry and makes it accessible to authorized participants via one interconnected, electronic network and admits that the technology for accessing the network is embedded in certain loan origination software offered by Ellie Mae. Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 12 of the Complaint.

13.     Answering paragraph 13 of the Complaint, Ellie Mae admits the allegations contained therein except that Ellie Mae denies any suggestion that "all" members of the mortgage industry actually are connected to the ePASS Network.  Only participants that have been authorized by Ellie Mae are provided with the electronic connectivity that is available through the ePASS Network.  Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 13 of the Complaint.

14.     Answering paragraph 14 of the Complaint, Ellie Mae admits that more than 2,000 settlement service providers are currently connected to the ePASS Network, including credit, title, flood, insurance and document preparation providers.  Ellie Mae admits that the ePASS Network

2

1    streamlines and automates transactions with certain Government Sponsored Entities, with many

2    of the nation's leading wholesale and correspondent lenders, with thousands of appraisers and

3    with the settlement service providers that are on the ePASS Network.  Ellie Mae admits that it has

4    claimed that the ePASS Network enables participating mortgage companies to do business online

5    with lenders and with settlement service providers.  Except as expressly admitted herein, Ellie

6    Mae denies each and every allegation contained in paragraph 14 of the Complaint.

7         15.    Answering paragraph 15 of the Complaint, Ellie Mae admits that in October 2008

8    the United States Patent and Trademark Office issued to Ellie Mae Patent No. 7,444,302, the

9    correct title of which is "Online System for Fulfilling Loan Applications from Loan Originators."

10   Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in

11   paragraph 15 of the Complaint.

12        16.    Answering paragraph 16 of the Complaint, Ellie Mae admits that the ePASS

13   Network was launched in 2001 and that the ePASS Network currently has at least 2,000 unique

14   partners, *i.e.* vendors approved for participation on the ePASS Network.  Ellie Mae admits that

15   millions of transactions have passed through the ePASS Network during some of the years

16   between 2001 and the present.  Ellie Mae also admits that it is informed and believes that during

17   2008 its Encompass Mortgage Management System, in conjunction with the ePASS Network,

18   connected 150,000 users to transact more than $5 billion in mortgages per month.  Except as

19   expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 16

20   of the Complaint.

21        17.    Answering paragraph 17 of the Complaint, Ellie Mae denies the allegations in the

22   first sentence of the paragraph.  Ellie Mae admits that in its current form, its website includes

23   statements that correspond to allegations contained in the second sentence of paragraph 17 of the

24   Complaint.  Except as expressly admitted herein, Ellie Mae denies each and every allegation

25   contained in paragraph 17 of the Complaint.

26        18.    Answering paragraph 18 of the Complaint, Ellie Mae admits that on or about

27   November 24, 2003, DocMagic and Ellie Mae entered into an agreement entitled "Electronic

28   Bridge Agreement" and that the Electronic Bridge Agreement was subsequently amended on or

3

about September 1, 2006. Ellie Mae further admits that the terms of the Electronic Bridge Agreement speak for themselves. Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 18 of the Complaint.

19.    Answering paragraph 19 of the Complaint, Ellie Mae admits that on or about May 21, 2009, Ellie Mae gave DocMagic written notice, pursuant to the Electronic Bridge Agreement, that the Electronic Bridge Agreement would not be renewed and would expire as of August 30, 2009. Ellie Mae also alleges that it offered to discuss with DocMagic terms for a new agreement, but that DocMagic did not respond to that offer. Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 19 of the Complaint.

20.    Answering paragraph 20 of the Complaint, Ellie Mae admits that, ever since the expiration of the Electronic Bridge Agreement, DocMagic has no longer had the right to access the ePASS Network and that DocMagic has declined to discuss terms for entering a new agreement by which it could continue accessing the ePASS Network. Ellie Mae also admits that, in response to inquiries from third parties, Ellie Mae has informed third parties that DocMagic is no longer a vendor-participant on the ePASS Network. Ellie Mae admits that it encourages customers and potential customers to use Ellie Mae products. Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 20 of the Complaint.

21.    Answering paragraph 21 of the Complaint, Ellie Mae admits that it has learned that DocMagic has illegally and in violation of contractual and/or other obligations used Ellie Mae's confidential and proprietary information and has induced, and attempted to induce, third parties who are licensees of Ellie Mae's software to breach the terms of their software licenses in order that DocMagic could unlawfully obtain access to Ellie Mae's software and servers for the benefit of DocMagic. Ellie Mae also admits that it has demanded that DocMagic cease and desist from encouraging Ellie Mae licensees to breach the terms of their licenses from Ellie Mae and that Ellie Mae has advised DocMagic that, if DocMagic fails to cease and desist, Ellie Mae would take appropriate legal action. Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 21 of the Complaint.

22.     Answering paragraph 22 of the Complaint, Ellie Mae incorporates its responses to paragraphs 1 through 19 of the Complaint as though fully and completely set forth herein.

23.     Answering paragraph 23 of the Complaint, Ellie Mae denies that it has violated the Sherman Act and denies that DocMagic is entitled to any relief under the Sherman Act, the Clayton Act or otherwise.  Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein.

24.     Answering paragraph 24 of the Complaint, Ellie Mae denies the allegations contained therein.

25.     Answering paragraph 25 of the Complaint, Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

26.     Answering paragraph 26 of the Complaint, Ellie Mae admits that it operates in interstate commerce.  Except as expressly admitted herein Ellie Mae denies each and every allegation contained in paragraph 26 of the Complaint.

27.     Answering paragraph 27 of the Complaint, Ellie Mae denies the allegations contained therein.

28.     Answering paragraph 28 of the Complaint, Ellie Mae denies the allegations contained therein.

29.     Answering paragraph 29 of the Complaint, Ellie Mae denies the allegations contained therein.

30.     Answering paragraph 30 of the Complaint, Ellie Mae denies the allegations contained therein.

31.     Answering paragraph 31 of the Complaint, Ellie Mae denies the allegations contained therein.

32.     Answering paragraph 32 of the Complaint, Ellie Mae denies the allegations contained therein.

33.     Answering paragraph 33 of the Complaint, Ellie Mae admits that it lawfully elected not to renew the Electronic Bridge Agreement which had previously afforded DocMagic access to the ePASS Network, and that DocMagic has refused to discuss entering a new

5

1  agreement that would provide it with renewed access.  Ellie Mae admits that it refuses to allow

2  DocMagic or others to use Ellie Mae's confidential and/or proprietary information to access

3  and/or use Ellie Mae's Encompass software and/or SDK software without Ellie Mae's consent.

4  Ellie Mae denies that its Encompass software and/or SDK is open-source, freeware, or otherwise

5  publicly available.  Ellie Mae admits that it provides mortgage closing document preparation

6  software that competes with DocMagic's mortgage closing document preparation software and

7  that Ellie Mae encourages customers and potential customers to use Ellie Mae's mortgage closing

8  document preparation software or one of the many other document preparation software products

9  available on the ePASS Network.  Except as expressly admitted herein, Ellie Mae denies each and

10  every allegation contained in paragraph 33 of the Complaint.

11       34.     Answering paragraph 34 of the Complaint, Ellie Mae denies the allegations

12  contained therein.

13       35.     Answering paragraph 35 of the Complaint, Ellie Mae denies the allegations

14  contained therein.

15       36.     Answering paragraph 36 of the Complaint, Ellie Mae denies the allegations

16  contained therein.

17       37.     Answering paragraph 37 of the Complaint, Ellie Mae denies the allegations

18  contained therein and expressly denies that DocMagic is entitled to any remedy whatsoever.

19       38.     Answering paragraph 38 of the Complaint, Ellie Mae denies the allegations

20  contained therein.

21       39.     Answering paragraph 39 of the Complaint, Ellie Mae incorporates its responses to

22  paragraphs 1 through 36 of the Complaint as though fully and completely set forth herein.

23       40.     Answering paragraph 40 of the Complaint, Ellie Mae denies that it has violated the

24  California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq*.  Ellie Mae lacks knowledge

25  or information sufficient to form a belief as to the truth of the remaining allegations contained

26  therein.

27

28

6

41.     Answering paragraph 41 of the Complaint, Ellie Mae admits that it has its principal place of business in California.  Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein.

42.     Answering paragraph 42 of the Complaint, Ellie Mae denies the allegations contained therein.

43.     Answering paragraph 43 of the Complaint, Ellie Mae denies the allegations contained therein.

44.     Answering paragraph 44 of the Complaint, Ellie denies the allegations contained therein and expressly denies that DocMagic is entitled to any remedy whatsoever.

45.     Answering paragraph 45 of the Complaint, Ellie Mae denies the allegations contained therein.

46.     Answering paragraph 46 of the Complaint, Ellie Mae incorporates its responses to paragraphs 1 through 43 of the Complaint as though fully and completely set forth herein.

47.     Answering paragraph 47 of the Complaint, Ellie Mae lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

48.     Answering paragraph 48 of the Complaint, Ellie Mae admits that, through its relationship with DocMagic as a participant on the ePASS Network, Ellie Mae became aware that DocMagic had business relationships of some sort – the terms of which were not known to Ellie Mae – with certain Encompass licensees.  Except as expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 48 of the Complaint.

49.     Answering paragraph 49 of the Complaint, Ellie Mae denies the allegations contained therein.

50.     Answering paragraph 50 of the Complaint, Ellie Mae denies the allegations contained therein.

51.     Answering paragraph 51 of the Complaint, Ellie Mae denies the allegations contained therein.

52.     Answering paragraph 52 of the Complaint, Ellie Mae denies the allegations contained therein.

7

1     53.     Answering paragraph 53 of the Complaint, Ellie Mae denies the allegations

2     contained therein.

3     54.     Answering paragraph 54 of the Complaint, Ellie Mae incorporates its responses to

4     paragraphs 1 through 51 of the Complaint as though fully and completely set forth herein.

5     55.     Answering paragraph 55 of the Complaint, Ellie Mae admits that, in response to

6     inquiries from third parties, Ellie Mae has informed third parties that DocMagic is no longer a

7     vendor-participant on the ePASS Network.  Ellie Mae admits that it encourages customers and

8     potential customers to use Ellie Mae's document preparation software products or one of the

9     many other document preparation software products available on the ePASS Network.  Except as

10    expressly admitted herein, Ellie Mae denies each and every allegation contained in paragraph 55

11    of the Complaint.

12    56.     Answering paragraph 56 of the Complaint, Ellie Mae denies the allegations

13    contained in the second sentence of the paragraph and lacks knowledge or information sufficient

14    to form a belief as to the truth of the remaining allegations contained therein.

15    57.     Answering paragraph 57 of the Complaint, Ellie Mae denies the allegations

16    contained therein.

17    58.     Answering paragraph 58 of the Complaint, Ellie Mae denies the allegations

18    contained therein.

19    59.     Answering paragraph 59 of the Complaint, Ellie Mae denies the allegations

20    contained therein.

21    60.     Answering paragraph 60 of the Complaint, Ellie Mae denies the allegations

22    contained therein.

23    61.     Answering paragraph 61 of the Complaint, Ellie Mae incorporates its responses to

24    paragraphs 1 through 58 of the Complaint as though fully and completely set forth herein.

25    62.     Answering paragraph 62 of the Complaint, Ellie Mae denies the allegations

26    contained therein.

27    63.     Answering paragraph 63 of the Complaint, Ellie Mae denies the allegations

28    contained therein.

## **AFFIRMATIVE DEFENSES**

As and for its affirmative defenses, Ellie Mae alleges as follows:

1.      Ellie Mae incorporates by reference the foregoing admissions, denials and allegations.

2.      As and for a first affirmative defense, Ellie Mae alleges that the Complaint, and each of the alleged claims for relief set forth therein, fails to state a claim upon which relief can be granted.

3.      As and for a second affirmative defense, Ellie Mae alleges that DocMagic's antitrust claims are barred, in whole or in part, because DocMagic has not suffered any antitrust injury.

4.      As and for a third affirmative defense, Ellie Mae alleges that DocMagic's antitrust claims are barred, in whole or in part, because they do not assert an injury to competition beyond any commercial disadvantage suffered by DocMagic.  Ellie Mae continues to make available through the ePASS Network the products and services of numerous document preparation software providers.

5.      As and for a fourth affirmative defense, Ellie Mae alleges that DocMagic's antitrust claims are barred, in whole or in part, because DocMagic lacks standing to seek relief for such claims.

6.      As and for a fifth affirmative defense, Ellie Mae alleges that insofar as the Complaint purports to allege that Ellie Mae retains a monopolistic position in a relevant market or a market position with a dangerous likelihood of becoming monopolistic, Ellie Mae has obtained its market position through entirely legitimate, procompetitive means.

7.      As and for a sixth affirmative defense, Ellie Mae alleges that insofar as the Complaint purports to allege that Ellie Mae violated the antitrust rule of reason, such claims are barred, among other reasons, because the Complaint does not allege a properly defined relevant market, because any restraints complained of are ancillary to legitimate, procompetitive activities, and because the Complaint does not even purport to allege how any procompetitive effects of Ellie Mae's legitimate activities may be outweighed by anticompetitive effects.

9

8. As and for a seventh affirmative defense, Ellie Mae alleges that the plaintiff is not entitled to any relief because the conduct complained of in the Complaint was justified because it was carried out in furtherance of Ellie Mae's legitimate business interests.

9. As and for a eighth affirmative defense, Ellie Mae alleges that the plaintiff is barred from relief, in whole or in part, because of the plaintiff's unclean hands.

10. As and for a ninth affirmative defense, Ellie Mae alleges that the plaintiff is barred from relief, in whole or in part, because of the equitable doctrine of estoppel.

11. As and for a tenth affirmative defense, Ellie Mae alleges that the plaintiff is barred from relief, in whole or in part, because of the equitable doctrine of waiver.

12. As and for a eleventh affirmative defense, Ellie Mae alleges that the plaintiff is barred from relief, in whole or in part, by the applicable statutes of limitations.

13. As and for a twelfth affirmative defense, Ellie Mae alleges that DocMagic is not entitled to any of the equitable relief requested in the Complaint insofar as it has an adequate remedy at law.

14. As and for a thirteenth affirmative defense, Ellie Mae alleges that DocMagic is not entitled to any of the injunctive relief requested in the Complaint because the hardship that would be imposed on Ellie Mae by the requested relief is greatly disproportionate to any hardship that DocMagic might suffer in its absence.

15. As and for a fourteenth affirmative defense, Ellie Mae alleges that DocMagic is not entitled to any relief for tortious interference with contractual relationship, tortious interference with prospective economic advantage or unfair competition because the conduct complained of in the Complaint is privileged, in that the conduct is lawful competition.

16. As and for a fifteenth affirmative defense, Ellie Mae alleges that DocMagic is not entitled to any relief because the conduct at issue was at all times the proper exercise of Ellie Mae's rights as a copyright owner and/or patentee. Ellie Mae has the right to restrict access to its proprietary software and technology.

Ellie Mae, Inc.'s Answer to Complaint & First Amended Counterclaim
Case No. 3:09-CV-4017-MHP

## RESERVATION OF DEFENSES AND AFFIRMATIVE DEFENSES

Ellie Mae hereby gives notice that it intends to rely upon any other defenses and affirmative defenses that may become available or appear during the discovery proceedings in this case and hereby reserves its right to amend its Answer to assert any such affirmative defenses.

## COUNTERCLAIM

Ellie Mae, by and through its undersigned counsel, hereby alleges the following First Amended Counterclaim ("Counterclaim") against DocMagic:

### JURISDICTION

1.       This is a civil action regarding allegations of copyright infringement arising under the copyright laws of the United States, Title 17 of the United States Code, as well as violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  This Court has subject matter jurisdiction over these federal law claims pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.       This Court has personal jurisdiction and venue over Counterclaim Defendant DocMagic because it is a California corporation with its principal place of business in Carson, California, and because DocMagic consented to personal jurisdiction and venue in this Court by filing the Complaint in this action.

### PARTIES

3.       Counterclaimant Ellie Mae is a Delaware corporation with its principal place of business in the city of Pleasanton, Alameda County, California.

4.       On information and belief, Counterclaim Defendant DocMagic is a corporation organized and existing under the laws of the State of California and has its principal place of business in the city of Carson, Los Angeles County, California.

### ELLIE MAE'S BUSINESS

5.       Ellie Mae realleges and incorporates by reference all previous paragraphs of its Counterclaim as if set forth fully herein.

6.       Ellie Mae is the author, developer, and provider of loan origination software

11

known collectively as "Encompass," a product used by mortgage professionals to facilitate the processing of mortgage loan applications. Encompass software is made available to mortgage brokers, mortgage bankers, credit unions, and other mortgage professionals, through license agreements with Ellie Mae. The Encompass LOS is used at the inception of the mortgage loan application process when the prospective borrower provides relevant data to the mortgage professional.

7.     The Encompass software includes a software development kit ("SDK"), used to allow Ellie Mae's licensees to interface with authorized third party applications through Encompass. Ellie Mae provides licensees with unique license keys in order to use and access the Encompass software and/or the SDK.

8.     One functionality embedded within Encompass is Ellie Mae's proprietary software (the "ePASS Technology") that allows Encompass licensees to access an online transaction platform ("the ePASS Network") that enables them to order and receive services from providers ("ePASS Partners") electronically. The ePASS Network is used to enable mortgage companies across the United States to do business conveniently with leading lenders and settlement service providers. Using the ePASS Technology, Encompass licensees are able to connect electronically with thousands of ePASS Partners. Lenders and vendors from all over the United States use Ellie Mae's Encompass and ePASS solutions to facilitate their transactions.

9.     In addition to its Encompass LOS, Ellie Mae makes certain other services related to the mortgage loan application process available to Encompass users. For example, Encompass users have the option to access closing document preparation software, which assists in the automated preparation of final mortgage documents for use at the close of escrow.

10.     In order to provide a variety of closing document preparation software solutions to its Encompass users, Ellie Mae has, from time to time, entered into reseller agreements with providers of such software. These agreements enable Ellie Mae to give Encompass users access to the products and services of these document preparation software providers while the users remain within the convenient and secure Encompass software platform.

**THE ELECTRONIC BRIDGE AGREEMENT**

11.     In November 2003, Ellie Mae and DocMagic entered into an agreement entitled "Electronic Bridge Agreement Between Ellie Mae and Participator" (hereinafter the "Electronic Bridge Agreement"), which was amended in September 2006.  In both its original and amended form, the Electronic Bridge Agreement allowed DocMagic to participate in the ePASS Network of vendors/participants who provide products and services related to the mortgage loan industry to Encompass licensees by means of the ePASS Technology, in exchange for DocMagic's payment of a fee for each transaction with a licensed Encompass customer.

12.     It is Ellie Mae's understanding that the fees DocMagic charged the licensed Encompass customers for document preparation services were approximately twelve times greater than the transaction fee that DocMagic paid Ellie Mae under the Electronic Bridge Agreement.  DocMagic acknowledged in the Electronic Bridge Agreement that the amount that it was obliged to pay Ellie Mae in transaction fees did not exceed the reasonable value of the goods, facilities and services provided by Ellie Mae under the agreement.

13.     In connection with the Electronic Bridge Agreement, Ellie Mae provided DocMagic with certain confidential or proprietary information (the "Ellie Mae Proprietary Information") to facilitate DocMagic's connectivity with Ellie Mae's licensees through the ePASS Technology embedded in the Encompass software.

14.     Ellie Mae also provided DocMagic with a license key and "demo" user ID for the Encompass software.  Ellie Mae has never provided DocMagic with a license key for the Encompass SDK.

15.     Pursuant to Section 1 of the Electronic Bridge Agreement, DocMagic was prohibited from reverse engineering, duplicating, modifying, or attempting to reverse engineer, duplicate, or modify the ePASS Technology.

16.     Pursuant to Section 10.4 of the Electronic Bridge Agreement, DocMagic agreed, among other things, that it would not disclose or use any Ellie Mae Proprietary Information received in connection with the Electronic Bridge Agreement for any purpose outside the scope of that Agreement.

13

17.     By its own terms, the Electronic Bridge Agreement automatically renewed periodically, unless a party delivered timely written notice of nonrenewal to the other party.

18.     In May 2009, Ellie Mae provided DocMagic with the requisite timely notice of nonrenewal of the Electronic Bridge Agreement.  After sending the notice, Ellie Mae attempted to negotiate terms with DocMagic for a new agreement, but DocMagic refused to negotiate new terms.  As a result, the Electronic Bridge Agreement terminated on August 30, 2009, upon the expiration of the then-existing term of the Agreement.  DocMagic's obligations under both Section 1 and Section 10.4 survived the termination of the Electronic Bridge Agreement.

## DOCMAGIC'S ILLEGAL ACTS TO OBTAIN CONTINUED, UNAUTHORIZED ACCESS TO THE ENCOMPASS SOFTWARE

19.     After the termination of the Electronic Bridge Agreement, DocMagic was no longer authorized to access the Encompass software, servers, or the ePASS Network. Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has illegally obtained unauthorized access to, and used, the Encompass software, including the SDK.

20.     Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has engaged in systematic, illegal access to, and improper acquisition of, confidential materials from, Ellie Mae's computers, in particular, the Encompass servers.  Through this scheme, DocMagic has illegally accessed and exported confidential information, including but not limited to Ellie Mae's confidential information as well as confidential consumer loan information.  DocMagic has gained repeated and unauthorized access to Ellie Mae's proprietary, password-protected Encompass software and servers without Ellie Mae's consent, in many cases by using Ellie Mae licensees' license keys and/or pre-textual customer log-in credentials.  Through such unauthorized access, DocMagic has copied and exported, and/or has induced the illegal copying and exporting of, confidential materials to be used with its own software.

21.     Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has reverse engineered, duplicated, modified, and/or otherwise used the SDK and other Ellie Mae Proprietary Information, without Ellie Mae's authorization, to create software ("DocMagic XL Technology").

Ellie Mae, Inc.'s Answer to Complaint & First Amended Counterclaim
Case No. 3:09-CV-4017-MHP

22.    Ellie Mae is informed and believes, and upon that basis alleges, that the DocMagic XL Technology uses, duplicates, incorporates, and/or invokes Ellie Mae's Encompass SDK to bypass the ePASS Technology and to gain a direct, unauthorized connection to Ellie Mae's Encompass software and its licensees.

23.    Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has provided its customers, including Encompass licensees, with the DocMagic XL Technology.

24.    Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has provided the DocMagic XL Technology to Encompass licensees who are not, and have never been, licensed to use the Encompass SDK or who lacked a license key for the SDK.

25.    Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has instructed Encompass licensees to use the DocMagic XL Technology in conjunction with Encompass and the SDK, without Ellie Mae's consent or authorization and in direct violation of the SDK license terms, in order to connect directly to DocMagic.

26.    Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has never informed any Encompass licensee that such use of the DocMagic XL Technology would violate Ellie Mae's rights in its proprietary information and/or intellectual property.

27.    Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic has attempted and/or continues to attempt to reverse engineer Ellie Mae's proprietary and confidential Encompass and SDK software.

## THE RESELLER AGREEMENT

28.    DocMagic is a provider of closing document preparation software.  On October 31, 2004, Ellie Mae entered into a reseller relationship with DocMagic when the parties executed the Ellie Mae, Inc. Strategic Partnership Agreement (hereinafter the "Strategic Partnership Agreement"), which was subsequently amended on September 1, 2005.

29.    On or about September 1, 2006, Ellie Mae and DocMagic entered into an agreement entitled "Reseller Agreement" (hereinafter the "Reseller Agreement"), which expressly superseded and replaced the Strategic Partnership Agreement.  The Reseller Agreement allowed Ellie Mae to act as a non-exclusive reseller of certain DocMagic closing document

15

Ellie Mae, Inc.'s Answer to Complaint & First Amended Counterclaim
Case No. 3:09-CV-4017-MHP

1    preparation products ("DocMagic Products").  Pursuant to the Reseller Agreement, Encompass

2    users, referred to in the Reseller Agreement as "Ellie Mae Clients," could access and use those

3    DocMagic Products from within Encompass.  As an authorized reseller, Ellie Mae was also

4    permitted to rebrand the DocMagic Products with Ellie Mae's trademarks and/or product names.

5    Ellie Mae made the DocMagic Products available to its Encompass licensees ("Rebranded DM

6    Products").

7                    **DOCMAGIC'S VIOLATIONS OF THE RESELLER AGREEMENT**

8            30.    The Reseller Agreement imposed certain important obligations upon DocMagic.

9    DocMagic's fulfillment of these obligations was essential to Ellie Mae's ability to properly resell

10    and distribute the Rebranded DM Products to the Ellie Mae Clients, and to obtain the benefits due

11    to Ellie Mae under the Reseller Agreement.

12            31.    Throughout the effective period of the Reseller Agreement, DocMagic repeatedly

13    disregarded its contractual obligations, causing significant harm to Ellie Mae's business and to its

14    relationships with the Ellie Mae Clients.  For example, although the Reseller Agreement required

15    DocMagic to provide Ellie Mae Clients with updates, upgrades, bug fixes, and/or enhancements

16    to the Rebranded DM Products no later than the time that DocMagic offered such updates,

17    upgrades, bug fixes and/or enhancements to DocMagic's direct customers of these products, Ellie

18    Mae is informed and believes, and upon that basis alleges, that DocMagic did not provide Ellie

19    Mae Clients with certain software updates, bug fixes, and/or enhancements in a timely manner, or

20    at all.  Consequently, at various times during the operation of the Reseller Agreement, Ellie Mae

21    Clients could only access a version of the Rebranded DM Products without the necessary updates,

22    upgrades, bug fixes and/or enhancements.

23            32.    The Reseller Agreement also required DocMagic to enable Ellie Mae Clients to

24    access and utilize Rebranded DM Products through Encompass "24 hours a day, 365 days a

25    year," except for scheduled downtimes.  With respect to the scheduled downtimes, DocMagic

26    was required to promptly notify Ellie Mae of any period of time when the Rebranded DM

27    Products would be inoperable or inaccessible.  However, Ellie Mae is informed and believes, and

28    upon that basis alleges, that DocMagic failed to provide Ellie Mae with the requisite notice when

                                                    16

1   the Rebranded DM Products were inoperable or inaccessible to Ellie Mae Clients.  As a result,

2   Ellie Mae Clients were unable to access the Rebranded DM Products from within Encompass.

3   On the occasions when DocMagic failed to provide Ellie Mae with any advance notice, warning,

4   and/or explanation, Ellie Mae was unable to notify its Ellie Mae Clients of the downtime, or to

5   provide any explanation or fixes during the downtime.  Ellie Mae Clients were therefore left with

6   the mistaken impression that Ellie Mae had failed to properly maintain and/or operate its closing

7   document preparation software solutions.

8          33.     Additionally, DocMagic was required to treat Ellie Mae's "Proprietary

9   Information," as defined in Section 7.1(a) of the Reseller Agreement, as strictly confidential and

10  not to disclose it to third parties.  DocMagic further was prohibited from using (or permitting the

11  use of) such information, other than in the course of carrying out the contemplated purposes of

12  the Reseller Agreement.  Pursuant to the Reseller Agreement, Ellie Mae provided DocMagic with

13  access to Ellie Mae Proprietary Information, such as the identities, contact information, and other

14  details of the Ellie Mae Clients and Ellie Mae's pricing information for those clients.  Ellie Mae is

15  informed and believes, and upon that basis alleges, that in violation of its obligations under the

16  Reseller Agreement, DocMagic has improperly used Ellie Mae's Proprietary Information,

17  including but not limited to information concerning Ellie Mae's customers and pricing, in order to

18  improperly solicit Ellie Mae Clients and to promote and market direct access to DocMagic

19  Products.

20         34.     Upon termination or expiration of the Reseller Agreement, DocMagic was

21  required to return or irretrievably destroy all of Ellie Mae's Proprietary Information and provide

22  Ellie Mae with a certificate of destruction.  Ellie Mae is informed and believes, and upon that

23  basis alleges, that despite the fact that the Reseller Agreement has terminated and/or expired,

24  DocMagic has failed to return or irretrievably destroy all of Ellie Mae's Proprietary Information

25  and provide Ellie Mae with a certificate of destruction as required.

26              **TERMINATION/EXPIRATION OF THE RESELLER AGREEMENT**

27         35.     DocMagic's failure to fully perform its obligations under the Reseller Agreement

28  undermined the parties' business relationship under the Agreement and injured Ellie Mae's

17

1    business, reputation, goodwill and relationships with its customers. As a result, Ellie Mae was

2    forced to reconsider whether it should continue with the Reseller Agreement.

3         36.    Pursuant to Section 9.1 of the Reseller Agreement, the Reseller Agreement would

4    automatically renew periodically, unless a party delivered timely written notice of non-renewal to

5    the other party. Upon the termination or expiration of the Reseller Agreement, a 60-day transition

6    period would commence. During the transition period, Ellie Mae Clients could continue to access

7    the Rebranded DM Products from within Encompass. This transition period was necessary to

8    enable Ellie Mae Clients to complete any pending mortgage loan applications through Ellie Mae's

9    Rebranded DM Products, to select an alternative closing document preparation software solution,

10   and/or to make arrangements to transfer their files and information to that alternative closing

11   document preparation software solution prior to the end of the transition period.

12        37.    On or about April 27, 2009, Ellie Mae exercised its rights under Section 9.1 of the

13   Reseller Agreement by mailing to DocMagic a timely notice of non-renewal of the Reseller

14   Agreement. Pursuant to Ellie Mae's notice, the Reseller Agreement would have terminated on

15   August 30, 2009, followed by a 60-day transition period, which would have been completed by

16   October 31, 2009.

17        38.    On or about April 28, 2009 (and prior to its receipt of Ellie Mae's notice),

18   DocMagic delivered to Ellie Mae its own notice of non-renewal, which would have terminated

19   the Reseller Agreement on September 1, 2009, followed by a 60-day transition period to be

20   completed by October 31, 2009.

21        39.    On or about August 28, 2009, a few days before the Reseller Agreement was

22   scheduled to expire, DocMagic abruptly terminated the Reseller Agreement, purportedly for

23   "cause," and claimed that Ellie Mae violated Section 7.3 by using DocMagic Proprietary

24   Information for purposes other than those contemplated under the Reseller Agreement.

25   DocMagic also notified Ellie Mae that DocMagic would not provide a transition period given this

26   purported termination for cause. Ellie Mae denies that cause existed for DocMagic's purported

27   termination of the Reseller Agreement. Ellie Mae is informed and believes, and upon that basis

28   alleges, that DocMagic purported to terminate the Reseller Agreement for "cause" in order to

18

1   eliminate the transition period, thus improperly eliminating its obligation to refrain from targeting

2   Ellie Mae Clients and soliciting their business until after the transition period.

3       40.    Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic

4   targeted and solicited business from Ellie Mae Clients during the period from August 28, 2009

5   through October 31, 2009, as well as during the effective period of the Reseller Agreement, in

6   violation of its obligations under the Reseller Agreement.

7       41.    Without the transition period, the Ellie Mae Clients were immediately and abruptly

8   denied ongoing access to DocMagic Products from within Encompass.  The loss of the transition

9   period severely compromised the Ellie Mae Clients' ability to continue or complete the existing

10  mortgage loan applications then in process through the Rebranded DM Products or to process

11  additional applications.  Many Ellie Mae Clients, finding themselves suddenly cut off from the

12  Rebranded DM Products without advance notice, inundated Ellie Mae with complaints and

13  demands for explanation and/or restoration of access.  The lost transition period also caused

14  significant disruption to Ellie Mae's business and detrimentally affected Ellie Mae's ability to

15  assist the Ellie Mae Clients in transitioning to alternative closing document preparation solutions

16  (including Ellie Mae's other closing document preparation solutions), provide Ellie Mae's usual

17  level of superior customer service to the Ellie Mae Clients, and earn revenue from use of the

18  Rebranded DM Products during the 60-day period following the termination of the Reseller

19  Agreement.  Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic

20  wrongfully voided the transition period, thus depriving Ellie Mae Clients of ongoing access to the

21  Rebranded DM Products during the transition period, depriving Ellie Mae of associated revenue,

22  damaging Ellie Mae's customer relationships, and causing disruption and confusion for Ellie Mae

23  and the Ellie Mae Clients.

24      **DOCMAGIC'S IMPROPER SOLICITATION OF ELLIE MAE CLIENTS**

25      42.    Pursuant to the Reseller Agreement, DocMagic agreed that it would not interfere

26  in the relationship between Ellie Mae and the Ellie Mae Clients by urging the Ellie Mae Clients to

27  become direct DocMagic clients rather than acquiring the rebranded closing document

28  preparation services from Ellie Mae.  This obligation was to exist for the duration of the Reseller

19

1    Agreement and during the transition period.  Specifically, DocMagic agreed that it would not give

2    Ellie Mae Clients any written or oral notice of availability or encouragement to contract with

3    DocMagic for direct access to the DocMagic Products rather than obtaining closing document

4    preparation services from Ellie Mae.

5         43.     Ellie Mae is informed and believes, and upon that basis alleges, that in direct

6    violation of the Reseller Agreement, DocMagic targeted Ellie Mae Clients in order to promote

7    and market direct access to DocMagic Products, both during the effective period of the Reseller

8    Agreement and the 60-day period from September 1, 2009 through October 30, 2009.

9                          **FIRST CLAIM FOR RELIEF**

10                         **(Copyright Infringement)**

11        44.     Ellie Mae realleges and incorporates by reference all previous paragraphs of its

12   Counterclaim as if set forth fully herein.

13        45.     Ellie Mae is, and at all relevant time has been, the copyright owner of the

14   Encompass software and SDK.

15        46.     Ellie Mae has obtained copyright registration certificates for the Encompass

16   software, including the SDK.  Additional registrations are pending.  Attached as Exhibits A

17   through C are true and correct copies of the copyright application receipt and copyright

18   registration records for the Encompass software, retrieved from the website for the U.S.

19   Copyright on or about October 5-6, 2009.   In registering the Encompass/SDK software, Ellie

20   Mae has complied in all respects with 17 U.S.C. § 101, *et seq*., the statutory deposit and

21   registration requirements thereof, and all other laws governing federal copyrights.

22        47.     By causing, accomplishing, engaging in, and/or enabling the unauthorized

23   copying, distribution, and/or use of the Encompass software and SDK, DocMagic has directly

24   infringed, and is continuing to directly infringe, Ellie Mae's copyrights, in violation of 17 U.S.C.

25   §§ 106 and 501.

26        48.     DocMagic has also contributorily infringed Ellie Mae's copyrights because it has

27   knowingly induced, caused, and/or materially contributed to the unauthorized copying,

28   distribution, and/or use of the Encompass software and SDK by DocMagic XL Technology users.

20

49.     DocMagic's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Ellie Mae.

50.     DocMagic's acts have caused and will continue to cause substantial irreparable harm that cannot be fully compensated or measured in money damages to Ellie Mae unless further infringement by Defendant is enjoined by this Court.

51.     Pursuant to 17 U.S.C. § 502, Ellie Mae is entitled to preliminary and permanent injunctions prohibiting further infringement of Ellie Mae's copyrights.

52.     Pursuant to 17 U.S.C. § 504, Ellie Mae is entitled to the amount of its actual damages incurred as a result of the infringement, in such amount as is shown by appropriate evidence upon the trial of this case.

53.     Pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to the maximum statutory damages, in the amount of $150,000, with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

54.     Pursuant to 17 U.S.C. § 505, Ellie Mae is also entitled to recover its attorneys' fees and costs of suit.

## SECOND CLAIM FOR RELIEF

### (Violation of Federal Computer Fraud and Abuse Act)

55.     Ellie Mae realleges and incorporates by reference all previous paragraphs of its Counterclaim as if set forth fully herein.

56.     DocMagic has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing Ellie Mae's computer(s) used for interstate commerce or communication, without authorization or by exceeding authorized access to such computer(s), and by obtaining information from such protected computer(s).

57.     DocMagic has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) by knowingly, and with intent to defraud Ellie Mae, accessing Ellie Mae's protected computer(s), without authorization or by exceeding authorized access to such computer(s), and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to Ellie Mae's confidential and/or proprietary information.

21

58.     The computer(s) that DocMagic accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).

59.     Ellie Mae has suffered damages and loss by reason of these violations, including, without limitation, harm to Ellie Mae's data and/or computer(s) and other losses and damages in an amount to be proved at trial, but in any event, in an amount over $5000 aggregated over a one-year period.

**THIRD CLAIM FOR RELIEF**

**(Violation of Comprehensive Computer Data Access and Fraud Act)**

60.     Ellie Mae realleges and incorporates by reference all previous paragraphs of its Counterclaim as if set forth fully herein.

61.     Ellie Mae is, and at all relevant times has been, the owner of the servers and computer systems that support the Encompass software.

62.     DocMagic has violated, and continues to violate, the Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502(c) by, *inter alia*:

- knowingly and without permission accessing and using Ellie Mae's data, computer system and/or computer network to wrongfully obtain money, property and/or data;

- knowingly and without permission accessing and using data and taking and/or copying supporting documentation from Ellie Mae's computer system and/or computer network;

- knowingly and without permission providing a means of accessing Ellie Mae's computer system and/or computer network; and/or

- knowingly and without permission accessing Ellie Mae's computer system and/or computer network.

63.     Upon information and belief, each of the acts by DocMagic complained of in this claim for relief is willful, malicious, oppressive, fraudulent, and in conscious disregard of Ellie Mae's rights, justifying the imposition of punitive and exemplary damages under California Civil Code § 3294.

22

1   64.    Ellie Mae has suffered damages and loss by reason of these violations, including,

2   without limitation, harm to Ellie Mae's data and/or computer(s), loss of business, expenses

3   necessarily incurred in investigating the unauthorized access and abuse of Ellie Mae's computer

4   system, computer networks, computer programs and/or data and in preventing such access and

5   abuse from occurring, and other losses and damages in an amount to be proved at trial.

6   **FOURTH CLAIM FOR RELIEF**

7   **(Breach of the Electronic Bridge Agreement)**

8   65.    Ellie Mae realleges and incorporates by reference all previous paragraphs of its

9   Counterclaim as if set forth fully herein.

10   66.    The Electronic Bridge Agreement constitutes a valid and binding written contract

11   between Ellie Mae and DocMagic.

12   67.    Ellie Mae has fulfilled all of its obligations to DocMagic in connection with the

13   Electronic Bridge Agreement, except as DocMagic has waived, prevented, or excused such

14   obligations by Ellie Mae.

15   68.    After the termination of the Electronic Bridge Agreement, DocMagic illegally

16   retained its access to Encompass users through the unauthorized and illegal use of Ellie Mae

17   Proprietary Information, including the Encompass SDK.

18   69.    DocMagic's acts constitute a material breach of the Electronic Bridge

19   Agreement, including but not limited to Sections 1 and 10.4.

20   70.    As a direct and proximate result of DocMagic's breach, Ellie Mae has

21   suffered, is suffering, and will continue to suffer damages in an amount to be proven at trial,

22   attorneys' fees and other legal costs.

23   71.    DocMagic's breach, unless and until enjoined and restrained by this Court,

24   will irreparably injure Ellie Mae's business.  DocMagic's unauthorized use of the SDK, the

25   Encompass software, and other Ellie Mae Proprietary Information is continuing and poses

26   the threat of further unauthorized use.  Ellie Mae has no adequate remedy at law and/or

27   adequate compensatory damages would be extremely difficult to ascertain.  Under the

28   applicable laws, including but not limited to California Civil Code § 3422, Ellie Mae is

23

therefore entitled to injunctive relief prohibiting DocMagic from any continued use of the SDK, the Encompass software, and Ellie Mae Proprietary Information, and of any software, technology, or other materials that constitute, disclose, incorporate or were derived from such proprietary information, including but not limited to the DocMagic XL Technology.

**FIFTH CLAIM FOR RELIEF**

**(Inducement of Breach of Contract)**

72.     Ellie Mae realleges and incorporates by reference all previous paragraphs of its Counterclaim as if set forth fully herein.

73.     Ellie Mae licenses the Encompass software to mortgage brokers, mortgage bankers, lenders, and other mortgage professionals pursuant to written license terms, including but not limited to the terms of the "Encompass360 Software License Agreement" (the "Encompass License Agreement").

74.     To facilitate the Encompass licensees' use of the Encompass software, Ellie Mae also licenses the SDK to each licensee for use in conjunction with Encompass.  Prior to August 2009 the SDK was provided to each licensee pursuant to the "Encompass Software Software Development Kit (SDK) License Agreement" (the "SDK License Agreement"), and beginning in August 2009 it was provided to licensees pursuant to the Encompass License Agreement.  The SDK License Agreement allowed the SDK software to be used (a) with a "Partner Product" or (b) to integrate applications within the licensee's corporate environment.  The SDK License Agreement did not authorize use of the SDK to integrate applications with third parties, since such integrations would be outside the licensee's corporate environment.

75.     Both the Encompass License Agreement and the SDK License Agreement prohibit the licensee from, *inter alia*:

>          (a)  Disclosing, modifying, distributing, copying, reverse engineering, or decompiling, or attempting to do any of the preceding to the Encompass software or SDK;

>          (b) Creating a derivative work based on the Encompass software or SDK;

1          (c)  Merging the Encompass software or SDK into any other software;

2             (d)  Using the SDK to build a replacement or alternative product or service to any

3                  Ellie Mae products or services; and/or

4          (e)  Allowing any third party to do any of the acts described above.

5       76.    Although the SDK License Agreement prohibited licensees from using the SDK to

6 connect directly with a third party such as DocMagic, in the wake of DocMagic's unauthorized

7 and illegal acts as described herein Ellie Mae supplemented the SDK license terms in August

8 2009 to emphasize the prohibition against use of the SDK for use outside the Encompass

9 environment and incorporated the SDK license into the Encompass License Agreement.  The

10 Encompass License Agreement also expressly prohibits the licensee's use of the SDK to transfer

11 data from the Encompass software to any third party products or services provider, thereby

12 bypassing the use of the ePASS Technology and ePASS Network, unless otherwise permitted by

13 Ellie Mae.

14       77.   DocMagic was aware of the existence of the Encompass Software License

15 Agreements and the SDK License Agreements between Ellie Mae and the Encompass licensees.

16       78.    DocMagic has contacted Encompass licensees and instructed them to disclose,

17 modify, copy, reverse engineer and/or otherwise misuse Ellie Mae's proprietary and confidential

18 information, including the Encompass software and SDK to connect to DocMagic's products and

19 services via the Encompass software without Ellie Mae's authorization and in violation of the

20 Encompass Software License Agreements and the SDK License Agreements.

21       79.    By its conduct, DocMagic intended to cause and has in fact caused the Encompass

22 licensees to breach the terms of the Encompass Software License Agreements and SDK License

23 Agreements.

24       80.    As a direct and proximate result of DocMagic's conduct as alleged herein, Ellie

25 Mae has suffered damages in an amount to be proven at trial.

26       81.    DocMagic's past and continuing inducement of the Encompass licensees' breach of

27 the Encompass Software License Agreements and the SDK License Agreements has irreparably

28 injured Ellie Mae's business and will continue to irreparably injure Ellie Mae's business absent

25

1    injunctive relief as prayed for herein.

2                              **SIXTH CLAIM FOR RELIEF**

3                          **(Breach of the Reseller Agreement)**

4           82.     Ellie Mae realleges and incorporates by reference all previous paragraphs of its

5    Counterclaim as if set forth fully herein.

6           83.     The Reseller Agreement constitutes a valid and binding written contract between

7    Ellie Mae and DocMagic.

8           84.     Ellie Mae has fulfilled all of its obligations to DocMagic in connection with the

9    Reseller Agreement, except as DocMagic has waived, prevented, or excused such obligations by

10   Ellie Mae.

11          85.     DocMagic's acts, as alleged above, constitute a material breach of the Reseller

12   Agreement.  DocMagic's breach includes:

13               • Wrongfully voiding the transition period provided for in the Reseller

14                  Agreement (Section 9.4);

15               • Targeting Ellie Mae Clients to promote and market direct access to the

16                  DocMagic Products via DocMagic instead of Ellie Mae (Sections 2.5 and

17                  9.4, Exhibit C);

18               • Improperly using Ellie Mae's Proprietary Information (Section 7.3);

19               • Failing to provide Ellie Mae Clients with updates, upgrades, fixes, and/or

20                  enhancements to the Rebranded DM Products in a timely manner, if at all

21                  (Section 4.4);

22               • Failing to provide Ellie Mae with notice of downtime during which the

23                  Rebranded DM Products would be inoperable or inaccessible to Ellie Mae

24                  Clients (Section 5.1(b)); and

25               • Failing to return or irretrievably destroy Ellie Mae's Proprietary

26                  Information following the termination of the Reseller Agreement or to

27                  provide Ellie Mae with a certificate of destruction (Section 9.5).

28

Ellie Mae, Inc.'s Answer to Complaint & First Amended Counterclaim
Case No. 3:09-CV-4017-MHP

86.     As a direct and proximate result of DocMagic's breach of the Reseller Agreement as alleged above, Ellie Mae has suffered, is suffering, and will continue to suffer damages in an amount to be proven at trial, as well as attorneys' fees and other legal costs.

87.     As a direct and proximate result of DocMagic's conduct as alleged herein, DocMagic has obtained unjust financial gain, is currently profiting from its breach of the Reseller Agreement, and has been unjustly enriched in an amount to be proven at trial.

Ellie Mae has no adequate remedy at law and/or adequate compensatory damages would be extremely difficult to ascertain.  Under the applicable laws, including, but not limited to, California Civil Code § 3422, Ellie Mae is therefore entitled to injunctive relief prohibiting DocMagic from any continued use of Ellie Mae's Proprietary Information.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relationship)

88.     Ellie Mae realleges and incorporates by reference all previous paragraphs of its Counterclaim as if set forth fully herein.

89.     Ellie Mae has entered into valid contractual relationships with various Ellie Mae Clients for the use of the Encompass software and for access to closing document preparation software through Encompass.

90.     DocMagic has either actual or constructive knowledge of the existence of the contractual relationships between Ellie Mae and the Ellie Mae Clients.

91.     Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic, knowing of Ellie Mae's contractual relationships with the Ellie Mae Clients, intended to and did disrupt the contractual relationship between Ellie Mae and the Ellie Mae Clients by promoting and inducing the direct access to DocMagic Products by the Ellie Mae Clients in lieu of accessing Rebranded DM Products from Ellie Mae.

92.     As a direct and proximate result of DocMagic's conduct as alleged herein, Ellie Mae has suffered damages in an amount to be proven at trial.

1    93.    As a direct and proximate result of DocMagic's conduct as alleged herein,

2    DocMagic has obtained unjust financial gain, is currently profiting from its improper acts, and

3    has been unjustly enriched in an amount to be proven at trial.

4    94.    Each of the acts by DocMagic complained of in this cause of action is willful,

5    wanton, malicious, oppressive and in conscious disregard of Ellie Mae's rights, justifying the

6    imposition of punitive and exemplary damages under California Civil Code § 3294.

7    **EIGHTH CLAIM FOR RELIEF**

8    **(Intentional Interference with Prospective Economic Advantage)**

9    95.    Ellie Mae realleges and incorporates by reference all previous paragraphs of its

10   Counterclaim as if set forth fully herein.

11   96.    Ellie Mae has had valid and existing business relationships with the Ellie Mae

12   Clients, with a reasonable probability of realizing a financial profit therefrom.

13   97.    DocMagic was aware or should have been aware that the Ellie Mae Clients' use of

14   the Encompass software, and particularly their use of Ellie Mae's closing document preparation

15   solutions through Encompass, would result in future economic benefit to Ellie Mae.

16   98.    Ellie Mae is informed and believes, and upon that basis alleges, that DocMagic

17   intended to disrupt the Ellie Mae Clients' use of the Encompass software to access Ellie Mae's

18   closing document preparation services by inducing them to acquire such services directly from

19   DocMagic rather than using Ellie Mae's solutions.

20   99.    As a direct and proximate result of DocMagic's conduct as alleged herein, Ellie

21   Mae has suffered damages in an amount to be proven at trial.

22   100.   As a direct and proximate result of DocMagic's conduct as alleged herein,

23   DocMagic has obtained unjust financial gain, is currently profiting from its improper acts, and

24   has been unjustly enriched in an amount to be proven at trial

25   101.   Each of the acts by DocMagic complained of in this cause of action is willful,

26   wanton, malicious, oppressive and in conscious disregard of Ellie Mae's rights, justifying the

27   imposition of punitive and exemplary damages under California Civil Code § 3294.

28   **NINTH CLAIM FOR RELIEF**

PALOALTO 103429 (2K)

**(Unfair Competition)**

102.   Ellie Mae realleges and incorporates by reference all previous paragraphs of its Counterclaim as if set forth fully herein.

103.   By the acts alleged herein, DocMagic has engaged in unfair competition in violation of California Business and Professions Code § 17200 *et seq.* and the common law of the State of California.

104.   DocMagic's acts of unfair competition as alleged herein threaten to and will cause irreparable injury to Ellie Mae's business.  Furthermore, such acts by DocMagic have misled or confused and/or will mislead or confuse consumers about the products or services that they received from DocMagic.  Accordingly, Ellie Mae is entitled to preliminary and permanently relief as prayed for herein.

## <u>PRAYER</u>

WHEREFORE, Defendant and Counterclaimant Ellie Mae prays that this Court enter judgment:

1.      In favor of Ellie Mae, and against DocMagic on the Complaint and on the Counterclaim, thereby dismissing DocMagic's Complaint in its entirety, with prejudice, with DocMagic taking nothing by way of its claims;

2.      Preliminarily and permanently enjoining and restraining DocMagic from accessing, using or inducing access or use of any materials that constitute, incorporate, or disclose Ellie Mae's proprietary or confidential information, or were derived from Ellie Mae's proprietary or confidential information;

3.      Preliminarily and permanently enjoining and restraining DocMagic from accessing, using, or inducing access or use of any materials that constitute, incorporate, or disclose Ellie Mae's Proprietary Information under the Reseller Agreement, and prohibiting further use of such information including, without limitation, prohibiting the further use of client information obtained by DocMagic through its reseller agreement with Ellie Mae.

4.      Awarding Ellie Mae its actual, incidental, special, and consequential damages according to proof;

5.      Awarding Ellie Mae appropriate equitable relief, including disgorgement of profits and unjust enrichment;

5.      Awarding Ellie Mae statutory damages pursuant to 17 U.S.C. § 504(c);

6.      Awarding Ellie Mae punitive or exemplary damages pursuant to California Penal Code § 502(e)(4);

7.      Awarding Ellie Mae its reasonable attorney's fees, interest, and costs herein; and

8.      Granting such other and further relief as the Court deems just and proper.

Dated: April 26, 2010                         WHITE & CASE LLP


By:    /s/ Ellen McGinty King
        Ellen McGinty King
Attorneys for Defendant
ELLIE MAE, INC.

1

2

## **JURY DEMAND**

3        Ellie Mae demands a trial by jury as to all issues so triable.

4

Dated: April 26, 2010                                    WHITE & CASE LLP

5

6

                                                         By:  /s/ Ellen McGinty King
7                                                              Ellen McGinty King
                                                         Attorneys for Defendant
8                                                        ELLIE MAE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31