JAMES P. BENNETT (CA SBN 65179)
JBennett@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
JTaylor@mofo.com
STUART C. PLUNKETT (CA SBN 187971)
SPlunkett@mofo.com
JACQUELINE A. BOS (CA SBN 243938)
JBos@mofo.com
NATHAN B. SABRI (CA SBN 252216)
NSabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
DOCMAGIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DOCMAGIC, INC., a California corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>ELLIE MAE, Inc., a Delaware corporation,<br><br>            Defendant. | Case No. 3:09-CV-4017-MHP<br><br>**DOCMAGIC'S NOTICE OF MOTION AND MOTION TO DISMISS ELLIE MAE'S FIRST, SECOND, THIRD, FOURTH, FIFTH, SEVENTH, EIGHTH, AND NINTH COUNTERCLAIMS**<br><br>Date:   July 26, 2010<br>Time:   2:00 pm<br>Ctrm:   15<br><br>Hon. Marilyn Hall Patel |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

NOTICE OF MOTION AND MOTION ......................................................................................1

ISSUES TO BE DECIDED ........................................................................................................1

INTRODUCTION .......................................................................................................................2

FACTUAL BACKGROUND .......................................................................................................3

LEGAL STANDARD ..................................................................................................................4

ARGUMENT ..............................................................................................................................5

I.  ELLIE MAE FAILS TO STATE A CLAIM FOR COPYRIGHT
    INFRINGEMENT (*COUNTERCLAIM 1*)........................................................................5

    A.  The Allegations of Direct Infringement Are Inadequate .......................................6

    B.  The Allegations of Contributory Infringement/Inducement Are
        Inadequate .............................................................................................................8

II. ELLIE MAE FAILS TO STATE A CLAIM UNDER THE COMPUTER
    FRAUD AND ABUSE ACT (*COUNTERCLAIM 2*) .......................................................10

    A.  Ellie Mae Does Not Allege Facts to State a Private Cause of Action
        Under the CFAA ...................................................................................................11

    B.  Ellie Mae Has Not Pled Facts to Support Its Allegations That
        DocMagic Had the Requisite Intent to Violate the CFAA.....................................13

    C.  Ellie Mae Has Not Pled Facts to Support Its Allegation That
        DocMagic Accessed a Computer Without Authorization........................................13

    D.  Ellie Mae Has Not Pled Facts Showing an Intent to Defraud or
        Furtherance of an "Intended Fraud"......................................................................14

III. ELLIE MAE FAILS TO STATE A CLAIM UNDER THE
     COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT
     (*COUNTERCLAIM 3*) ...................................................................................................15

IV. ELLIE MAE FAILS TO STATE A CLAIM FOR BREACH OF THE
    ELECTRONIC BRIDGE AGREEMENT (*COUNTERCLAIM 4*)..................................16

V.  ELLIE MAE FAILS TO STATE A CLAIM FOR INTENTIONAL
    INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
    (*COUNTERCLAIM 8*) ...................................................................................................17

    A.  Ellie Mae Fails Adequately to Identify the Third Parties Whose
        Relationships with Ellie Mae Were Disrupted ......................................................18

B.     Ellie Mae Does Not Allege Actionable Wrongful Conduct...............................18

C.     Ellie Mae Has Not Pled Facts Showing a Probability of Future Economic Benefit..................................................................................................20

VI.    ELLIE MAE FAILS TO STATE A CLAIM FOR INDUCEMENT OF BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP (*COUNTERCLAIMS 5 AND 7*).............................................................................................................................21

VII.   ELLIE MAE FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION (*COUNTERCLAIM 9*) ....................................................................22

A.     Ellie Mae Fails to Allege Sufficient Facts to Support Its Claim .........................22

B.     Ellie Mae Fails to Allege Conduct That Threatens an Incipient Violation of Antitrust Law ......................................................................................23

C.     Ellie Mae Fails to Allege That It Lost Money or Property as a Result of DocMagic's Alleged Unfair Competition ...........................................24

CONCLUSION..................................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*A&M Records v. Napster, Inc.*,
 239 F.3d 1004 (9th Cir. 2001) .................................................................................8, 10

*Altera Corp. v. Clear Logic, Inc.*,
 424 F.3d 1079 (9th Cir. 2005) ....................................................................................7, 9

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009) ...............................................................................................*passim*

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
 No. CIV. C:10-291 WBS KJM,
 2010 U.S. Dist. LEXIS 42109 (E.D. Cal. Apr. 29, 2010) ....................................14

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................*passim*

*Bonner v. Redwood Mortgage Corp.*,
 No. C 10-00479 WHA, 2010 U.S. Dist. LEXIS 29969 (N.D. Cal. Mar. 29, 2010) ...............23

*Californians for Disability Rights v. Mervyn's, LLC*,
 39 Cal. 4th 223 (2006)...................................................................................................24

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
 20 Cal. 4th 163 (1999)...................................................................................................24

*Chance v. Ave. A, Inc.*,
 165 F. Supp. 2d 1153 (W.D. Wash. 2001) ................................................................12

*Citizens of Humanity, LLC v. Costco Wholesale Corp.*,
 171 Cal. App. 4th 1 (2009) ........................................................................................24

*EBay, Inc. v. Bidder's Edge*,
 100 F. Supp. 2d 1058 (N.D. Cal. 2000).....................................................................7, 9

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
 No. 04cv2562 JM(LSP), 2005
 U.S. Dist. LEXIS 45237 (S.D. Cal. Aug. 10, 2005) ..............................................18

*Entm't Research Group v. Genesis Creative Group*,
 122 F.3d 1211 (9th Cir. 1997) ...................................................................................6, 8

*Estate of Hirata v. Ida*,
 No. 10-00084 LEK, 2010 U.S. Dist. LEXIS 53932 (D. Hawaii May 28, 2010)..............14, 15

Google Inc. v. Am. Blind & Wallpaper Factory, Inc.,
No. C 03-05340 JF, 2005 U.S. Dist. LEXIS 6228 (N.D. Cal. Mar. 30, 2005)......................20

In re Doubleclick Privacy Litig.,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................................ 10, 12

In re Intuit Privacy Litig.,
138 F. Supp. 2d 1272 (C.D. Cal. 2001) ............................................................................12

Joaquin v. GEICO Gen. Ins. Co.,
No. C 07-3259 JSW, 2008 U.S. Dist. LEXIS 2077 (N.D. Cal. Jan. 2, 2008) ........................16

JRS Prods., Inc. v. Matsuhita Elec. Corp. of America,
115 Cal. App. 4th 168 (2004) ............................................................................................19

Katz v. Cal-Western Reconveyance Corp.,
No. d:09-04866-JF, 2010 U.S. Dist. LEXIS 13385 (N.D. Cal. Jan. 27, 2010)......................25

Kelly v. Arriba Soft Corp.,
336 F.3d 811 (9th Cir. 2003) ...............................................................................................6

Khoury v. Maly's of Cal., Inc.,
14 Cal. App. 4th 612 (1993) ..............................................................................................19

Korea Supply Co. v. Lockheed Martin Corp.,
29 Cal. 4th 1134 (2003)................................................................................... 17, 18, 20

Lackey v. CBS Radio, Inc.,
No. C 06-03987 MHP, 2008 U.S. Dist. LEXIS 7638 (N.D. Cal. Feb. 1, 2008)...............18-19

LVRC Holdings LLC v. Brekka,
581 F.3d 1127 (9th Cir. 2009) ...........................................................................................10

Mendiondo v. Centinela Hosp. Med. Ctr.,
521 F.3d 1097 (9th Cir. 2008) .............................................................................................4

Meridian Project Sys. v. Hardin Constr. Co., LLC,
426 F. Supp. 2d 1101 (E.D. Cal. 2006) ...............................................................................7

Motorola, Inc. v. Lemko Corp.,
609 F. Supp. 2d 760 (N.D. Ill. 2009)..................................................................................15

Nevis v. Wells Fargo Bank,
No. C 07-2568 MHP, 2007 U.S. Dist. LEXIS 65932 (N.D. Cal. Sept. 6, 2007)...................23

Pac. Gas & Elec. Co. v. Bear Stearns & Co.,
50 Cal. 3d 1118 (1990).......................................................................................................21

PAI Corp. v. Integrated Sci. Solutions, Inc.,
No. C-06-05349 JCS, 2009 U.S. Dist. LEXIS 38833 (N.D. Cal. Apr. 23, 2009)............. 19, 21

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .................................................................................................8

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007), *cert denied*, 230 S. Ct. 2871 (2008) ......................................10

*Qureshi v. Countrywide Home Loans, Inc.*,
  No. C 09-4198 SBA,
  2010 U.S. Dist. LEXIS 21843 (N.D. Cal. Mar. 10, 2010) .......................................................23

*SAP Am., Inc. v. Kensington & Taylor*,
  No. CV 96-1327 DT (BQRx),
  1997 U.S. Dist. LEXIS 241255 (C.D. Cal. Feb. 11, 1997) ......................................................22

*Sebastian Int'l, Inc. v. Russolillo*,
  186 F. Supp. 2d 1055 (C.D. Cal. 2000) ...................................................................................20

*SecureInfo Corp. v. Telos Corp.*,
  387 F. Supp. 2d 593 (E.D. Va. 2005) ......................................................................................14

*Silicon Knights v. Crystal Dynamics*,
  983 F. Supp. 1303 (N.D. Cal. 1997) ........................................................................................22

*Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*,
  138 Cal. App. 4th 1215 (2d Dist. 2006) ...................................................................................24

*Strawflower Elecs., Inc. v. Radioshack Corp.*,
  No. C-05-0747 MMC, 2005 U.S. Dist. LEXIS 45205 (N.D. Cal. Sept. 20, 2005) ...............16

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .................................................................................................24

*Tain v. Hennessey*,
  No. CIV S-08-3085-GEB-CMK-P,
  2009 U.S. Dist. LEXIS 11654 (S.D. Cal. Dec. 1, 2009) .........................................................16

*Troyk v. Farmers Group, Inc.*,
  171 Cal. App. 4th 1305 (2009) ................................................................................................24

*Walker v. Geico Gen. Ins. Co.*,
  558 F.3d 1025 (9th Cir.) .....................................................................................................24, 25

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996) ........................................................................................17, 18, 20

*Williams v. Foote*,
  No. CV 08-2838-CJC (JTL),
  2009 U.S. Dist. LEXIS 81958 (C.D. Cal. Apr. 30, 2009) ...................................................7, 21

**STATUTES, RULES & REGULATIONS**

17 U.S.C.
 § 106 ............................................................................................................6, 7

18 U.S.C.
 § 1030 .......................................................................................................*passim*

Fed. R. Civ. P.
 Rule 8 ...............................................................................................................5
 Rule 9 .............................................................................................................15
 Rule 12 ......................................................................................................*passim*

N.D. Cal. Local Rules
 Rule 7-4(a)(3) ...................................................................................................1

Cal. Penal Code
 § 502 ..............................................................................................................15

California Bus. & Prof. Code
 § 17200 .....................................................................................................*passim*

# NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 26, 2010, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 15 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Marilyn Hall Patel, DocMagic, Inc. ("DocMagic") shall and hereby does move to dismiss counterclaims 1, 2, 3, 4, 5, 7, 8, and 9 of Ellie Mae, Inc.'s Answer to Complaint and First Amended Counterclaim (Dkt. No. 35), filed April 26, 2010.

DocMagic seeks dismissal of the above counterclaims alleged against DocMagic pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based on this Notice of Motion and Motion and supporting Memorandum of Points and Authorities, the pleadings, records and files in this action, and such other written or oral arguments as may be presented at or before the time this Motion is taken under submission by the Court.

## ISSUES TO BE DECIDED
**(Local Rule 7-4(a)(3))**

1. For the copyright infringement claim (first counterclaim), (a) whether Ellie Mae has pled facts sufficient to state a claim for copyright infringement, and (b) whether Ellie Mae's failure to allege third-party copyright infringement requires that its claim for contributory copyright infringement and/or inducement be dismissed.

2. For the federal Computer Fraud and Abuse Act claim (second counterclaim), (a) whether Ellie Mae has pled facts sufficient to allege a private cause of action, (b) whether Ellie Mae has pled facts sufficient to allege a claim that DocMagic intentionally or knowingly accessed computers, (c) whether Ellie Mae has pled sufficient facts to allege that DocMagic accessed computers without authorization, and (d) whether Ellie Mae's failure to identify a specific fraud requires that its claim under 18 U.S.C. § 1030(a)(4) be dismissed.

3. For the California Comprehensive Computer Data Access and Fraud Act (third counterclaim), whether Ellie Mae has failed to state a claim because it has not pled facts sufficient to support a claim that DocMagic accessed computers knowingly and without permission.

4.     For the breach of the Electronic Bridge Agreement claim (fourth counterclaim), whether Ellie Mae has failed to state a claim because it has not pled facts sufficient to support a claim that DocMagic used proprietary information that it obtained in connection with the agreement in order to retain access to Encompass users.

5.     For the intentional interference with prospective economic advantage claim (eighth counterclaim), (a) whether Ellie Mae's failure to sufficiently identify the third parties whose contractual relationships were allegedly disrupted or impeded requires that the claim be dismissed, (b) whether Ellie Mae's failure to allege an independently wrongful act requires that the claim be dismissed, and (c) whether Ellie Mae has failed to state a claim because it has not pled facts that support a probability of future economic benefit to Ellie Mae.

6.     For the inducement of breach of contract and intentional interference with contractual relationship claims (fifth and seventh counterclaims), (a) whether Ellie Mae's failure to sufficiently identify a party whose contractual relationship was allegedly disrupted or impeded requires that the claim be dismissed, and (b) whether Ellie Mae's failure to establish that any specific relationship was disrupted or impeded requires that the claim be dismissed.

7.     For the California unfair competition claim (ninth counterclaim), (a) whether the claim fails for indefiniteness, (b) whether the claim fails because Ellie Mae did not allege conduct threatening an incipient violation of the antitrust laws, and (c) whether Ellie Mae lacks standing to make the claim because Ellie Mae fails to allege that it lost money or property as a result of the alleged unfair competition.

## INTRODUCTION

Ellie Mae's First Amended Counterclaim ("Counterclaim") is largely supported by conclusory allegations and recitations of claim elements—precisely the type of allegations that the Supreme Court has held are insufficient to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Ellie Mae attempts to allege a wide variety of claims, including copyright infringement, computer crimes, breach of contract, common law torts, and unfair competition. But once the conclusory, nonfactual allegations are

1  stripped away, all but one of Ellie Mae's claims—a breach of contract claim—necessarily fails as

2  a matter of law.

3      Ellie Mae's copyright infringement counterclaim, for example, alleges that DocMagic

4  contributorily infringed Ellie Mae's copyright without including allegations that a third party

5  infringed as well.  If there was no direct infringement by a third party, DocMagic cannot be liable

6  for contributory infringement.

7      Similarly, Ellie Mae has failed to plead facts sufficient to establish the type of economic

8  harm that is a prerequisite for a private cause of action under the federal computer statute.

9  Without that harm, Ellie Mae has no standing to bring the claim.

10     As for the common law torts, which all revolve around the concept of interfering with

11  contractual relationships with third parties, Ellie Mae has not adequately alleged that a contractual

12  relationship with Ellie Mae was disrupted or impeded.

13     Finally, Ellie Mae's Section 17200 counterclaim fails for several reasons.  It is too

14  indefinite under the applicable pleading standard, because it constitutes nothing more than a short

15  recitation of the claim elements.  Ellie Mae also fails to plead the requisite "unfair" acts of

16  DocMagic and fails to plead that Ellie Mae lost money or property—both prerequisites to stating

17  a claim under Section 17200.

18     As set forth herein, the first, second, third, fourth, fifth, seventh, eighth, and ninth

19  counterclaims should be dismissed.

20                          **FACTUAL BACKGROUND**

21     As alleged in the Counterclaim, DocMagic is a Carson, California-based company that

22  provides mortgage closing document preparation software.  (Counterclaim ¶¶ 2, 28.)  Ellie Mae

23  provides loan origination software, known as "Encompass," for use by mortgage professionals.

24  (*Id.* ¶ 6.)  The Encompass software includes a software development kit ("SDK") used to allow

25  third-party applications to interface with Encompass.  (*Id.* ¶ 7.)  Ellie Mae's licensees are

26  provided with unique license keys to use and access the Encompass software and the SDK.  (*Id.*)

27  Ellie Mae also provides an online transaction platform known as "the ePASS Network" that

28  unites Encompass licensees with lender and settlement service providers.  (*Id.* ¶ 8.)

From 2003 to 2009, through an agreement entitled "Electronic Bridge Agreement Between Ellie Mae and Participator," DocMagic participated as a provider of services through the ePASS Network. (*Id.* ¶ 11.) In 2004, Ellie Mae entered into a reseller relationship with DocMagic through which Ellie Mae acted as a non-exclusive reseller of certain DocMagic closing document products. (*Id.* ¶¶ 28-29.) In connection with this reseller relationship, Ellie Mae and DocMagic executed a "Strategic Partnership Agreement" in 2004, replaced by a "Reseller Agreement" in 2006. (*Id.*) In 2009, Ellie Mae sent DocMagic notices of nonrenewal of both the Electronic Bridge Agreement and the Reseller Agreement. (*Id.* ¶¶ 18, 37.)

Ellie Mae alleges that after the Electronic Bridge Agreement was terminated, DocMagic accessed the Encompass servers and exported Ellie Mae and consumer information. (*Id.* ¶¶ 19-20.) Ellie Mae alleges that this access was carried out in many cases by the use of Ellie Mae licensees' license keys and customer log-in credentials. (*Id.*) Ellie Mae alleges that DocMagic has never been provided a license key for the Encompass SDK and that DocMagic reverse-engineered, duplicated, modified, or otherwise used the SDK to create software. (*Id.* ¶¶ 14, 21.) Ellie Mae alleges further that the software created in this manner by DocMagic has been provided to DocMagic's customers, and is used to bypass Ellie Mae's ePASS Network and gain direct connection to Ellie Mae's Encompass software. (*Id.* ¶¶ 21-22.) Ellie Mae alleges that DocMagic instructed Encompass licensees to use this software to connect to DocMagic directly, in violation of the SDK License Agreements between Ellie Mae and Encompass licensees. (*Id.* ¶¶ 25, 76.)

## LEGAL STANDARD

A motion to dismiss should be granted where a party fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if a complaint lacks a cognizable legal theory or lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Although a court is obliged to take all factual allegations in the complaint as true, allegations that are no more than conclusions "are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

1  and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

2  *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Iqbal*, 129 S. Ct. at 1953

3  (clarifying that *Twombly* applies to "all civil actions").

4      In *Iqbal*, the Supreme Court held that Rule 8 of the Federal Rules of Civil Procedure

5  "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "does

6  not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

7  *Iqbal*, 129 S. Ct. at 1949-50. This requirement applies to every element of each claim. For

8  example, the Respondent in *Iqbal* pled the elements of knowledge and a policy of discrimination

9  in a conclusory manner that amounted to "nothing more than a 'formulaic recitation of the

10  elements' of a constitutional discrimination claim." *Id.* at 1951, quoting *Twombly*, 550 U.S. at

11  555. The Supreme Court held that these elements were "disentitle[d] . . . to the presumption of

12  truth" and the pleadings "[did] not meet the standard necessary to comply with Rule 8." *Id.* at

13  1951-52; *see also Twombly*, 550 U.S. at 553-54, 57 (conclusory allegation of "agreement"

14  element insufficient to state claim for Sherman Act Section 1 claim).

## ARGUMENT

### I.    ELLIE MAE FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT (*COUNTERCLAIM 1*)

18      Ellie Mae's copyright infringement counterclaim is fundamentally flawed because it is not

19  specific enough to satisfy the pleading requirements set out in *Twombly* and *Iqbal*. *Iqbal*, 129 S.

20  Ct. at 1949-50; *Twombly*, 550 U.S. at 555. The Counterclaim is so vague that DocMagic has not

21  been put on notice as to which act by DocMagic is alleged to have infringed which Ellie Mae

22  copyright. For example, the Counterclaim as drafted includes a laundry list of potentially

23  infringing acts allegedly done by DocMagic, all connected by a series of "and/or" modifiers.

24  Sprinkled among them are acts that do not even constitute copyright infringement, such as

25  reverse-engineering and unlicensed use of a software program. The Counterclaim also appears to

26  allege that DocMagic contributed to a third party's infringement of Ellie Mae's copyright

27  "and/or" induced a third party to infringe it, but there are no factual allegations supporting a claim

28  of contributory infringement or inducement. Finally, the allegations are so conclusory that it

1  appears that Ellie Mae may even be claiming that DocMagic has infringed materials in which

2  Ellie Mae does not claim to own the copyright.

3      The copyright infringement counterclaim should be dismissed under Rule 12(b)(6) for

4  failure to state a claim and, if it is permitted to amend a second time, Ellie Mae should be required

5  to provide specific factual allegations for each element to support a copyright infringement claim.

6              **A.      The Allegations of Direct Infringement Are Inadequate**

7      The Ninth Circuit has defined the elements required to prove copyright infringement as

8  proving both that the plaintiff owns the original material at issue and that the defendant violated

9  one of the six rights that are exclusive to the copyright owner, namely (i) the right to reproduce

10 the work, (ii) the right to prepare derivative works, (iii) the right to distribute copies of the work,

11 (iv) the right to perform the work publicly, (v) the right to display the work, and (vi) the right to

12 perform the work publicly by digital audio transmission.  17 U.S.C. § 106; *see also Kelly v.*

13 *Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2003) (owner of copyright has exclusive right to

14 reproduce, distribute, and publicly display copies of work); *Entm't Research Group v. Genesis*

15 *Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997) (to establish copyright infringement,

16 copyright holder must prove both valid ownership of copyright and infringement of that

17 copyright).  If a copyright infringement claim fails to allege either or both of these elements, it is

18 deficient and must be dismissed for failure to state a claim.

19     Ellie Mae's Counterclaim is so vague, in part due to overuse of the "and/or" modifier, that

20 it is impossible to discern what DocMagic is alleged to have done.  Although not certain,

21 DocMagic believes that Ellie Mae may be basing its copyright infringement claim upon the

22 following allegations:

23             DocMagic has illegally obtained unauthorized access to, and used,
               the Encompass software, including the SDK.  (Counterclaim ¶ 19.)
24

25             …

26             Doc Magic has reverse engineered, duplicated, modified, and/or
               otherwise used the SDK and other Ellie Mae Proprietary
27             Information, without Ellie Mae's authorization, to create software.
               (*Id.* ¶ 21.)

28             …

> DocMagic XL Technology uses, duplicates, incorporates, and/or invokes Ellie Mae's Encompass SDK. (*Id.*, ¶ 22.)
>
> …
>
> DocMagic has attempted and/or continues to attempt to reverse engineer Ellie Mae's proprietary and confidential Encompass and SDK software. (*Id.* ¶ 27.)
>
> …
>
> By causing, accomplishing, engaging in, and/or enabling the unauthorized copying, distribution, and/or use of the Encompass software and SDK, DocMagic has directly infringed, and is continuing to directly infringe, Ellie Mae's copyrights. (*Id.* ¶ 47.)

These vague and confusing references to alternative acts, which may or may not have happened, do not provide enough notice for DocMagic to meaningfully respond and defend itself, and thus fail to state a claim. *See Williams v. Foote*, No. CV 08-2838-CJC (JTL), 2009 U.S. Dist. LEXIS 81958, at *48-49 & n.8 (C.D. Cal. Apr. 30, 2009) (directing plaintiff to file amended complaint with specificity sufficient to enable defendants to frame defense). At most, these references "create a suspicion" of a copyright claim, and the Supreme Court has made it clear that this is not sufficient to withstand a Rule 12(b)(6) motion. *See Twombly*, 550 U.S. at 555 ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (internal quotation omitted).

Moreover, several of the acts listed above do not even constitute copyright infringement and cannot serve as a basis for a copyright claim: reverse-engineering, "unauthorized access," and "use" of a software program, whether authorized or not. *See* 17 U.S.C. § 106; *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90 (9th Cir. 2005) (holding that claim concerning unauthorized use of software program is "not within the rights protected by the federal Copyright Act"); *Meridian Project Sys. v. Hardin Constr. Co., LLC*, 426 F. Supp. 2d 1101, 1109 (E.D. Cal. 2006) ("Reverse engineering is not within the scope of the exclusive rights of copyright."); *EBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1072 (N.D. Cal. 2000) (right to exclude others from use of computer systems without authorization is "qualitatively different from copyright infringement claim") (internal quotation omitted). Allegations of acts that are not violations of

the Copyright Act are insufficient to state a claim for copyright infringement and cannot survive a motion to dismiss. *See Ent'mt Research Group*, 122 F.3d at 1217.

Finally, to the extent that Ellie Mae may rely on its allegation that "DocMagic has copied and exported, and/or has induced the illegal copying and exporting of, confidential materials to be used with its own software" (Counterclaim ¶ 20) to support its copyright claim, this allegation is insufficient for two reasons. First, the allegation does not identify the "confidential materials" with sufficient detail for DocMagic to know what it is alleged to have copied and exported, and second, the allegation does not even allege that Ellie Mae owns the copyright in the "confidential materials"—a crucial element in a copyright infringement claim. If it does not own the copyright in the allegedly copied and exported "confidential materials," Ellie Mae cannot assert copyright infringement. *Ent'mt Research Group*, 122 F.3d at 1217.

In sum, Ellie Mae's claim of direct copyright infringement is not sufficiently definite to withstand a motion to dismiss. If Ellie Mae is permitted to amend its Counterclaim, it should be required to identify the allegedly infringed materials and the allegedly infringing acts with sufficient specificity to put DocMagic on notice so that DocMagic can formulate defenses to these allegations.

**B.      The Allegations of Contributory Infringement/Inducement Are Inadequate**

The Ninth Circuit has held that a claim for indirect copyright infringement may be stated by alleging either contributory or vicarious infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (defining secondary liability doctrines of contributory and vicarious infringement: "'one infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop it'") (quoting *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). Under either theory, the plaintiff must first show direct infringement by a third party. *Id.* Thus, indirect copyright infringement "does not exist in the absence of direct infringement by a third party." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001).

With respect to contributory infringement and inducement, Ellie Mae alleges the following: DocMagic provided its customers, including Encompass licensees, with "the DocMagic XL Technology"; the DocMagic XL Technology was provided to Encompass licensees who have never been licensed to use the Encompass SDK or who "lacked a license key for the SDK"; DocMagic "instructed" the licensees to use the technology in connection with Ellie Mae's Encompass program and the SDK "without Ellie Mae's consent or authorization and in direct violation of the SDK license terms"; and DocMagic never informed any Encompass licensee that use of DocMagic XL Technology would violate Ellie Mae's rights. (Counterclaim ¶¶ 23-26.) Based upon these sparse allegations, Ellie Mae alleges that "DocMagic has also *contributorily infringed* Ellie Mae's copyrights because it has knowingly *induced, caused, and/or materially contributed* to the unauthorized copying, distribution,[1] and/or use of the Encompass software and SDK by DocMagic XL Technology users." (*Id.* ¶ 48 (emphasis added).)

At their essence, Ellie Mae's allegations are merely that its licensees may have been induced to use DocMagic XL Technology in conjunction with Encompass and the SDK, in violation of the Encompass license agreement. These allegations, however, are not sufficient to support a claim for contributory copyright infringement or inducement because the act that DocMagic is alleged to have induced is not copyright infringement. As explained above, *unauthorized use* of a software program does not constitute copyright infringement. *See Altera Corp.*, 424 F.3d at 1089-90 (unauthorized use of software program is "not within the rights protected by the federal Copyright Act"); *EBay, Inc.*, 100 F. Supp. 2d at 1072 (right to exclude others from use of computer systems without authorization is "qualitatively different from copyright infringement claim") (internal quotation omitted).

---

[1] Although the Counterclaim itself alleges "copying" and "distribution" (Counterclaim ¶ 48), the relevant factual allegations do not mention either copying or distribution by Ellie Mae's licensees; they refer only to DocMagic's alleged instructions to "use" DocMagic XL Technology with Encompass of the SDK. (*See id.* ¶ 25.) Thus, there is no factual support for Ellie Mae's allegation that DocMagic contributed to the copying or distribution of Ellie Mae's copyrighted materials and this portion of the Counterclaim is not sufficient under *Iqbal* and *Twombly*.

Moreover, even if unauthorized use of software could constitute copyright infringement, Ellie Mae does not allege actual use of the software; instead, it merely alleges that DocMagic *instructed* licensees to use the software.  (Counterclaim ¶ 25.)  Instructions alone, however, are not sufficient for a contributory copyright infringement or inducement claim because such claims require an infringing *act* by a third party.  *A&M Records*, 239 F.3d at 1013 n.2 (indirect copyright infringement "does not exist in the absence of direct infringement by a third party").  Without a claim for copyright infringement by Encompass licensees, Ellie Mae cannot state a claim for contributory copyright infringement or inducement against DocMagic and Ellie Mae's claims must be dismissed under Rule 12(b)(6).[2]

## II. ELLIE MAE FAILS TO STATE A CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT (*COUNTERCLAIM 2*)

Ellie Mae also fails to state a claim under the Computer Fraud and Abuse Act (the "CFAA") because it does not plead facts sufficient to support several required elements for such a claim.  The CFAA is a criminal statute intended to prevent significant damage to computer records and persons by computer hackers or other such unauthorized users.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130-31 (9th Cir. 2009); *see also In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d 497, 526 (S.D.N.Y. 2001) ("the histories of these statutes reveal specific Congressional goals—punishing destructive hacking, preventing wiretapping for criminal or tortious purposes, securing the operations of electronic communication service providers—that are carefully embodied in these criminal statutes and their corresponding civil rights of action").

Ellie Mae has attempted to allege two types of CFAA actions:  unauthorized access to obtain information from a computer, and unauthorized access of a computer to conduct a fraud

---

[2] The remaining elements of contributory copyright infringement all make reference to the direct infringement by a third party and are nonsensical when applied to a case where no direct infringement by a third party has been alleged.  *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795, 802 (9th Cir. 2007), *cert denied*, 230 S. Ct. 2871 (2008) (elements of contributory copyright infringement are knowledge of direct infringement and material contribution to or inducement of infringing activity). Having failed to plead such directly infringing activity, Ellie Mae *a fortiori* has not pled factual allegations supporting these elements.

and to obtain something of value. (Counterclaim ¶¶ 56-57 (citing 18 U.S.C. § 1030(a)(2)(C), (a)(4)).) The CFAA provides civil penalties under certain circumstances. 18 U.S.C. § 1030(g).

Ellie Mae's allegations are deficient for several reasons. Most significantly, a private right of action under the CFAA is only available to address certain specified types of conduct (*Id.*), and Ellie Mae has not pled sufficient facts to establish that it has a private right of action.

Also, one of the claims that Ellie Mae is asserting requires a finding that DocMagic "intentionally access[ed] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). However, Ellie Mae has not pled sufficient facts to support an allegation that DocMagic intentionally accessed a computer without authorization.

The other claim that Ellie Mae is asserting requires a finding that DocMagic "knowingly and with intent to defraud, access[ed] a protected computer without authorization, or exceed[ed] authorized access, and by means of such conduct further[ed] the intended fraud and obtain[ed] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4). Ellie Mae also has not pled facts to support an allegation that DocMagic knowingly accessed a computer without authorization and with the intent to commit fraud, or that DocMagic took something that was valued at more than $5,000.

Ellie Mae's allegations of a CFAA violation are simply not sufficient under the *Iqbal* and *Twombly* standard, and this cause of action should be dismissed.

**A.      Ellie Mae Does Not Allege Facts to State a Private Cause of Action Under the CFAA**

Ellie Mae has failed to allege facts that would support the only basis under which it can bring a private cause of action under the CFAA:  economic harm.[3]  Because it has not properly

---

[3] The remaining circumstances where a private cause of action exists are impairment of medical examination, diagnosis, or treatment, physical injury, threat to public health or safety, and damage affecting a government computer. 18 U.S.C. § 1030(c)(4)(A)(i)(II)-(V), (g). None has been alleged in this case and none applies.

alleged economic harm, Ellie Mae does not have standing to bring a private cause of action (*see* 18 U.S.C. § 1030(g)), and the claim should be dismissed in its entirety under Rule 12(b)(6).

General allegations of harm are not sufficient. The CFAA itself specifies that the alleged economic harm must be at least $5,000 in value. 18 U.S.C. § 1030(c)(4)(A)(i)(I), (g). In interpreting that requirement, courts have held that only specific financial losses are recoverable. Generalized statements of loss or non-financial damages are not sufficient to withstand a motion to dismiss. *See Doubleclick*, 154 F. Supp. 2d at 524 n. 33 (allegations claiming invasion of privacy, trespass to personal property, and misappropriation of confidential data not actionable because "only economic losses are recoverable under § 1030(g)"). Moreover, the economic damage must total at least $5,000 from a *single act*; it cannot be aggregated across multiple alleged acts of wrongful conduct. *Id.* at 523-24; *cf. Chance v. Ave. A, Inc.*, 165 F. Supp. 2d 1153, 1159-60 (W.D. Wash. 2001) (stating that Congressional intent was "to punish only the most severe of computer fraud actions" and granting judgment as matter of law for failure to provide evidence that each alleged act of defendant caused at least $5,000 of damage or loss) (citing *Doubleclick*, 154 F. Supp. 2d at 521-522).

Ellie Mae does not begin to plead such a claim. As with most of its other claims, Ellie Mae offers only an insufficient formulaic recitation of the element: "Ellie Mae has suffered damages and loss by reason of these violations, including, without limitation, harm to Ellie Mae's data and/or computer(s) and other losses and damages in an amount to be proved at trial, but in any event, in an amount over $5000 *aggregated over a one-year period*." (Counterclaim ¶ 59 (emphasis added).) This formulaic recitation of elements alone is insufficient. *Twombly*, 550 U.S. at 555. It does not plead factual allegations supporting any financial loss, much less facts to support a claim of over $5,000 in losses from *a single act*. *See Doubleclick*, 154 F. Supp. 2d at 526 (holding that plaintiffs failed to allege facts to support damage threshold and granting motion to dismiss with prejudice); *In re Intuit Privacy Litig.*, 138 F. Supp. 2d 1272, 1281 (C.D. Cal. 2001) (granting motion to dismiss where complaint did not include sufficient facts constituting allegation that plaintiffs suffered at least $5,000 in economic damages).

Because Ellie Mae has not pled facts to establish that it has a private right of action, the CFAA claim should be dismissed.

### B. Ellie Mae Has Not Pled Facts to Support Its Allegations That DocMagic Had the Requisite Intent to Violate the CFAA

As a matter of law, Ellie Mae can succeed on its specific CFAA claims only if it can prove the requisite intent for each type of claim: that DocMagic intentionally accessed a computer without authorization, or that DocMagic knowingly and with intent to defraud accessed a computer without authorization. 18 U.S.C. § 1030(a)(2)(C), (a)(4). Although Ellie Mae's second counterclaim includes bare allegations that DocMagic's alleged unauthorized computer access was both "intentional" and "knowing" (Counterclaim ¶¶ 56-57), such allegations are not sufficient to withstand a motion under Rule 12(b)(6) when, as here, there are no supporting factual allegations.

Paragraphs 19-27 of the Counterclaim, which contain the factual allegations relevant to the copyright and computer claims, do not contain a single allegation regarding DocMagic's mental state. (*See* Counterclaim ¶¶ 19-27.) Instead, these paragraphs focus solely on Ellie Mae's mental state—its belief that what DocMagic was doing was "unauthorized"—which is irrelevant to the analysis. Because Ellie Mae has included no facts to support its allegations regarding DocMagic's mental state, and instead has merely recited the requisite mental state in the list of elements for the claim, its CFAA claim cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

### C. Ellie Mae Has Not Pled Facts to Support Its Allegation That DocMagic Accessed a Computer Without Authorization

Although Ellie Mae has included a conclusory allegation that DocMagic was "unauthorized" to access Ellie Mae's computers, the underlying factual allegations contradict, rather than support, this claim. Ellie Mae's allegations reveal that DocMagic was acting *with the authorization of Ellie Mae's licensees and customers*. (Counterclaim ¶ 20.) For example, Ellie Mae states that DocMagic accessed Encompass software and servers by using the license keys and customer log-in credentials of Ellie Mae's own licensees. (*Id.*) Although it characterizes the

use of the log-in credentials as "pre-textual," Ellie Mae does not allege that these keys or log-in credentials were fraudulent, stolen, or otherwise acquired without the licensees' consent. (*Id.*) Thus, the factual allegations in the Counterclaim do not support the legal conclusion that the access was unauthorized. Where factual allegations contradict the conclusory legal allegations pled by a party in its attempt to state a claim, the claim should be dismissed. *See Estate of Hirata v. Ida*, No. 10-00084 LEK, 2010 U.S. Dist. LEXIS 53932, at *16-17 (D. Hawaii May 28, 2010) (granting motion to dismiss because factual allegations contradicted conclusory legal allegation). Accordingly, Ellie Mae has not stated a claim under the CFAA.

Moreover, this dismissal should be with prejudice, because using a licensee's license keys and customer log-in credentials to access a computer can never be a basis for a CFAA claim where the access was with the licensees' permission, as here. *See, e.g., AtPac, Inc. v. Aptitude Solutions, Inc.*, No. CIV. C:10-291 WBS KJM, 2010 U.S. Dist. LEXIS 42109, at *19 (E.D. Cal. Apr. 29, 2010) (granting motion to dismiss and holding that allegations of subterfuge would have been necessary in order to "find a defendant not party to a license agreement civilly liable under the CFAA where the licensee grants it authority to access information in violation of the license agreement"); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 608-10 (E.D. Va. 2005) (holding that defendant could not have intentionally acted without authorization where defendant was acting under permission of plaintiff's licensee).

Because Ellie Mae has failed to plead factual allegations supporting the required element of "without authorization," and has instead pled factual allegations contradicting this element, Ellie Mae's CFAA claim should be dismissed.

### D. Ellie Mae Has Not Pled Facts Showing an Intent to Defraud or Furtherance of an "Intended Fraud"

Ellie Mae's claim that DocMagic committed a fraud in violation of the CFAA is deficient because Ellie Mae fails to allege a single fact to support the fraud allegation. Indeed, it does not even define what the allegedly "intended fraud" was. The Counterclaim does not disclose who Ellie Mae believes has been defrauded, how the alleged fraud took place, how DocMagic "furthered" that fraud, or what the nature of the fraud was. All that Ellie Mae has alleged is that

DocMagic "furthered" an "intended fraud." (Counterclaim ¶ 57.)  This bare-bones allegation with no supporting facts is insufficient to support a cognizable fraud theory, puts DocMagic in the untenable position of being unable to defend itself against the serious claim of fraud, and is contrary to the Supreme Court's holdings in *Iqbal* and *Twombly*.  *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.  Accordingly, the fraud-based portion of Ellie Mae's CFAA counterclaim should be dismissed for failure to state a claim.[4]

### III. ELLIE MAE FAILS TO STATE A CLAIM UNDER THE COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT (*COUNTERCLAIM 3*)

Ellie Mae's California Comprehensive Computer Data Access and Fraud Act ("CCDAFA") claim is deficient for similar reasons.  First, as discussed above, Ellie Mae has pled no factual allegations addressing DocMagic's mental state.  The CCDAFA prohibits nine types of computer crimes, and the element of "knowingly" is common to all.  Cal. Penal Code § 502(c)(1)-(9).  Ellie Mae's failure to plead facts supporting the required element of knowledge renders the CCDAFA counterclaim deficient and subject to dismissal per *Iqbal* and *Twombly*.  *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

Second, Ellie Mae makes factual allegations that contradict its claim that DocMagic's access of computers was without permission, an element that is common to all provisions of the CCDAFA other than the provision addressing computer contaminants, which is not alleged or at issue in this case.  Cal. Pen. Code § 502(c)(1)-(9).  When the alleged facts contradict the alleged legal theory, a motion to dismiss is appropriate.  *See Estate of Hirata*, 2010 U.S. Dist. LEXIS 53932, at *16-17.  Thus, the CCDAFA counterclaim must be dismissed in its entirety.

---

[4] Although the Ninth Circuit has not addressed the issue of whether a heightened pleading standard applies to Section 1030(a)(4)'s requirement that the defendant's acts furthered an intended fraud, the public policy reasons for the heightened Fed. R. Civ. P. 9(b) pleading standard are just as compelling in this case and should lead to the conclusion that this standard applies.  *See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009) ("Rule 9(b)'s requirement that '[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud,' . . . quite plainly applies to section 1030(a)(4)'s requirement that the defendant's acts further the intended fraud.").

# IV. ELLIE MAE FAILS TO STATE A CLAIM FOR BREACH OF THE ELECTRONIC BRIDGE AGREEMENT (*COUNTERCLAIM 4*)

Ellie Mae fails to state a claim for breach of the Electronic Bridge Agreement, because Ellie Mae does not plead factual allegations supporting its claim that DocMagic took actions prohibited by the contract.

In deciding a motion to dismiss, a court may consider the entire contract if the claim necessarily relies on the contract and the authenticity of the contract is not contested. *Strawflower Elecs., Inc. v. Radioshack Corp.*, No. C-05-0747 MMC, 2005 U.S. Dist. LEXIS 45205, at *6, *9 n.1 (N.D. Cal. Sept. 20, 2005). If it is clear from the unambiguous terms of a contract that the conduct alleged by the plaintiff does not constitute a breach, a court may grant a motion to dismiss the breach of contract claim. *Joaquin v. GEICO Gen. Ins. Co.*, No. C 07-3259 JSW, 2008 U.S. Dist. LEXIS 2077, at *5-8 (N.D. Cal. Jan. 2, 2008) (dismissing breach of contract claim where insurance policy did not prohibit alleged conduct of defendant); *see also Tain v. Hennessey*, No. CIV S-08-3085-GEB-CMK-P, 2009 U.S. Dist. LEXIS 11654, at *20-21 (S.D. Cal. Dec. 1, 2009) (granting motion to dismiss where unambiguous terms of contract demonstrated alleged conduct did not constitute breach).

Here, Ellie Mae alleges that DocMagic "illegally retained its access to Encompass users through the unauthorized and illegal use of Ellie Mae Proprietary Information, including the Encompass SDK." (Counterclaim ¶ 68.) Ellie Mae alleges that this constitutes a material breach of the Electronic Bridge Agreement and makes specific reference to Sections 1 and 10.4. (*Id.* ¶ 69.)

Section 1 contains no language that appears relevant to the alleged breach.[5] Ellie Mae is apparently alleging a breach of Section 10.4 of the Electronic Bridge Agreement based on DocMagic's supposed "use" of Ellie Mae's "proprietary information." That claim, however, fails

---

[5] Ellie Mae intends to submit a copy of the Electronic Bridge Agreement under seal with its motion to dismiss, which will be filed the same day as this motion. For the convenience of the Court, DocMagic will not separately submit the same contract under seal. DocMagic therefore refers the Court to Ellie Mae's submission for review of the contract provisions cited herein.

as a matter of law based on the contract's unambiguous language. Section 10.4 prohibits continued use of proprietary information that was "*obtained in connection with this Agreement.*"[6] The Counterclaim, however, does not allege that DocMagic attempted to retain access to Encompass users by using proprietary information that DocMagic "*obtained in connection with the Agreement.*"

Instead, the Counterclaim expressly alleges that DocMagic retained access to Encompass users by using the *licensees*' license keys and log-in credentials (Counterclaim ¶¶ 19-20), and the Counterclaim makes clear that DocMagic itself never received a license key for the Encompass SDK. (*Id.* ¶ 14.) Thus, Ellie Mae alleges no facts that would constitute a breach of Section 10.4 of the Electronic Bridge Agreement. Because Ellie Mae has included no facts to support its allegations regarding breach of the Electronic Bridge Agreement, its counterclaim cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50.

Accordingly, Ellie Mae has failed to state a claim for breach of contract and its fourth counterclaim should be dismissed.

## V.  ELLIE MAE FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (*COUNTERCLAIM 8*)

Ellie Mae fails to state a claim for intentional interference with prospective economic advantage because (1) it does not sufficiently identify a third party whose relationship was disrupted, (2) it does not plead factual allegations showing an actionable independently wrongful act, and (3) it fails to plead any factual allegations showing a probability of future economic benefit, each of which is a required element of the tort. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003); *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521-22 (1996).

---

[6] Again, DocMagic refers the Court to the copy of the contract submitted under seal by Ellie Mae.

**A.** **Ellie Mae Fails Adequately to Identify the Third Parties Whose Relationships with Ellie Mae Were Disrupted**

The requirement that the third parties that are the subject of the interference be adequately identified is an essential element of this claim. *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 518, 527 (holding that plaintiff has to show "an existing relationship with an identifiable buyer," not merely class of unknown potential buyers, for interference with prospective economic benefit claim); *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04cv2562 JM(LSP), 2005 U.S. Dist. LEXIS 45237, at *13 (S.D. Cal. Aug. 10, 2005) (dismissing claim where plaintiff alleged interference with "unidentified potential customers").

Here, Ellie Mae defines the term "Ellie Mae Clients" to include all Encompass users. (Counterclaim ¶ 29.) Its interference with prospective economic advantage counterclaim refers only to "valid and existing business relationships with the Ellie Mae Clients" (*id.* ¶ 96), and does not specifically identify a single client who decided not to do business with Ellie Mae or provide further information about the class of alleged potential clients. Ellie Mae's vague "I-lost-business-with-some-or-all-Encompass-users" is identical to the "interference with the market" theory that has been roundly rejected by California courts. *See*, *e.g.*, *Westside Ctr. Assocs.*, 42 Cal. App. 4th 507, 523 (rejecting "lost opportunity" approach because it would "allow[] recovery no matter how speculative the plaintiff's expectancy").

Because it has not adequately identified the prospective relationships with which DocMagic is alleged to have interfered, Ellie Mae fails to state a claim for interference with prospective economic advantage, and that claim should be dismissed.

**B.** **Ellie Mae Does Not Allege Actionable Wrongful Conduct**

The California Supreme Court held in *Korea Supply* that "[t]o establish a claim for interference with prospective economic advantage . . . a plaintiff must plead that the defendant engaged in an independently wrongful act." *Korea Supply*, 29 Cal. 4th at 1158. This "wrongful act" cannot be the act of interference itself, as mere interference without additional wrongdoing is not tortious. *Id.* at 1158-59; *Lackey v. CBS Radio, Inc.*, No. C 06-03987 MHP, 2008 U.S. Dist.

1    LEXIS 7638 (N.D. Cal. Feb. 1, 2008) (allegation of interference that could not be independently

2    wrongful other than fact of interference itself was insufficient to state claim).

3        Moreover, California courts have consistently held that a breach of contract cannot meet

4    the "wrongful act" requirement, as this would essentially allow plaintiffs to "transmute[]" a

5    contract claim "into tort liability by claiming that the breach interfered with the promisee's

6    business." *JRS Prods., Inc. v. Matsuhita Elec. Corp. of America*, 115 Cal. App. 4th 168, 181-83

7    (2004); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 618 (1993) (affirming dismissal

8    without leave to amend and stating that if "plaintiff could plead in a conclusory way that the

9    defendant maliciously intended to drive the plaintiff out of business, the tort of interference with

10   prospective business advantage would be routinely pleaded in breach of contract cases"); *see also*

11   *PAI Corp. v. Integrated Sci. Solutions, Inc.*, No. C-06-05349 JCS, 2009 U.S. Dist. LEXIS 38833,

12   at *45 (N.D. Cal. Apr. 23, 2009) (alleged breach of contract "may not provide the basis for tort

13   liability on a claim for interference with prospective economic advantage") (citing *JRS Prods.*,

14   115 Cal. App. 4th at 181-83).

15       Such transmutation is precisely what Ellie Mae is attempting to do with this counterclaim.

16   As in *JRS Products*, the conduct underlying Ellie Mae's intentional interference with prospective

17   economic advantage claim sounds in contract, not in tort. *See JRS Prods.*, 115 Cal. App. 4th at

18   181 ("our job is to determine whether the essence of the claim is fundamentally based on conduct

19   that sounds in contract or in tort."). Ellie Mae's counterclaim for intentional interference with

20   prospective economic advantage is based solely on its allegation that DocMagic "induc[ed]

21   customers to acquire . . . services directly from DocMagic rather than using Ellie Mae's

22   solutions." (Counterclaim ¶ 98.) It argues that this solicitation was "in direct violation of the

23   Reseller Agreement." (*Id.* ¶ 43.)

24       Thus, the only basis for Ellie Mae's claim of interference with prospective economic

25   advantage is that DocMagic breached the Reseller Agreement. This is not sufficient. *See PAI*

26   *Corp.*, 2009 U.S. Dist. LEXIS 38833, at *45 (allegation of breach of contract is not sufficient to

27   alleged interference with prospective economic advantage). The eighth counterclaim should be

28   dismissed.

**C.** **Ellie Mae Has Not Pled Facts Showing a Probability of Future Economic Benefit**

Ellie Mae is also required to plead facts supporting its claim that it would have received a specific future economic benefit but for DocMagic's conduct (*Korea Supply*, 29 Cal. 4th at 1153), which cannot consist of vague or speculative allegations. *See Westside Ctr. Assocs.*, 42 Cal. App. 4th at 524 (allegations that amount to mere "hope for an economic relationship and a desire for future benefit" inadequate to satisfy pleading requirement) (internal quotation omitted). Moreover, because the alleged economic benefit must be a *future* economic benefit, allegations of interference with an existing contract are not sufficient for this claim. *See Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1073-74 (C.D. Cal. 2000) (holding that plaintiff failed to allege facts showing a prospective contract or economic advantage was disrupted because it referenced only "existing contracts with its distributors and salons," and dismissing claim). Finally, vague claims of potential additional sales to unspecified current or return customers are not sufficient. *See Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-05340 JF, 2005 U.S. Dist. LEXIS 6228, at *37 n.31, 39-40 (N.D. Cal. Mar. 30, 2005) (plaintiff's claim that, but for the defendant's conduct, it was "reasonably certain that [the defendant] would realize additional sales from existing customers and/or new customers" was insufficient to state a claim) (internal quotation omitted).

Ellie Mae's sole factual allegation with respect to this element is insufficient: "Ellie Mae has had valid and existing business relationships with the Ellie Mae Clients, with a reasonable probability of realizing a financial profit therefrom." (Counterclaim ¶ 96). These facts merely establish that Ellie Mae already has business relationships with current Ellie Mae clients, which does not establish a claim for interference with prospective economic advantage because such a claim cannot be based upon a current relationship. *Sebastian Int'l*, 186 F. Supp. 2d at 1073-74. To the extent that Ellie Mae is alleging that it hopes to receive additional business from its current customers, its claim is insufficiently vague. *See Google*, 2005 U.S. Dist. LEXIS 6228, at *37 n.31, 39-40.

Because Ellie Mae has failed to plead facts sufficient to support a claim of a "probability of future economic benefit," it has not stated a claim of interference with prospective economic advantage and its eighth counterclaim should be dismissed.

## VI. ELLIE MAE FAILS TO STATE A CLAIM FOR INDUCEMENT OF BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP (*COUNTERCLAIMS 5 AND 7*)

Ellie Mae's claims for inducement of breach of contract and intentional interference with contractual relationship are deficient for similar reasons. The following elements are required to state a claim for intentional interference with contractual relationship or inducement of breach of contract under California law: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (elements of intentional interference with contractual relationship); *see also PAI Corp.*, 2006 U.S. Dist. LEXIS 34828, at *9 (noting that "under California law, [inducement to breach a contract] is called "interference with contractual relations"").

Ellie Mae has not alleged facts to support any of these elements. As an initial matter, Ellie Mae has not identified the breached or disrupted contractual relationship that is the basis for this claim. Ellie Mae's references to relationships with overbroad classes of third parties such as "Encompass licensees" and "Ellie Mae Clients," which is defined to include all Encompass users (Counterclaim ¶¶ 29, 79, 91), do not provide enough notice for DocMagic to meaningfully respond and defend itself, and thus fail to state a claim. *See Williams*, 2009 U.S. Dist. LEXIS 81958, at *48-49 & n.8 (directing plaintiff to file amended complaint with specificity sufficient to enable defendants to frame defense).

Furthermore, Ellie Mae has not pled facts supporting the required element of actual breach or disruption of a contractual relationship. As with the contributory copyright infringement claim discussed above, this is fatal to Ellie Mae's counterclaim because absent such breach or disruption, DocMagic cannot be liable for a claim of intentional interference with contractual

relationship. *See Silicon Knights v. Crystal Dynamics*, 983 F. Supp. 1303, 1310

(N.D. Cal. 1997) ("[T]he complaint does not satisfy Rule 8(a) since there are no facts from which

the court or defendants can infer that [the relevant contractual relationship] was *actually disrupted*

*or impeded*, or that [plaintiff] suffered any damages as a result of [d]efendants' actions.")

(emphasis added); *SAP Am., Inc. v. Kensington & Taylor*, No. CV 96-1327 DT (BQRx), 1997

U.S. Dist. LEXIS 24125, at *25 (C.D. Cal. Feb. 11, 1997) (granting motion to dismiss where

customer list included names of existing customers, because "it is difficult to understand what

contract has been lost or disrupted by [defendant's] alleged interference and more clarification is

needed in this regard").

Ellie Mae has not included any allegations regarding the remaining elements of the

claims:  that DocMagic knew about the unidentified contract, that DocMagic had the intent to

disrupt the unidentified contractual relationship, and that Ellie Mae has been damaged as a result

of the alleged breach.  Absent such allegations, Ellie Mae's counterclaims for inducement of

breach of contract and intentional interference with contractual relationship fail to state a claim.

The Court should dismiss these counterclaims under Rule 12(b)(6).

## VII.   ELLIE MAE FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION (*COUNTERCLAIM 9*)

Ellie Mae fails to state a claim under California Business and Professions Code Section

17200 for three independent reasons.  First, the claim fails for indefiniteness under *Iqbal* and

*Twombly*.  Second, Ellie Mae fails to allege that DocMagic's conduct threatens an incipient

violation of the antitrust laws, as Ellie Mae is required to do to state a claim for "unfair" conduct

against a competitor.  Third, Ellie Mae fails to allege that it lost money or property as a result of

the alleged unfair competition.

### A.   Ellie Mae Fails to Allege Sufficient Facts to Support Its Claim

Ellie Mae's Section 17200 claim consists of nothing more than a clipped recitation of the

claim's elements.  (*See* Counterclaim ¶¶ 102-04.)  For example, Ellie Mae does not even attempt

to identify the conduct that it alleges supports its assertion that DocMagic has engaged in "unfair"

conduct within the meaning of Section 17200.  Ellie Mae says only that "DocMagic's acts of

unfair competition *as alleged herein* threaten to and will cause irreparable injury to Ellie Mae's business" (*Id.* ¶ 104 (emphasis added)), but, rather than identify the conduct "alleged herein," Ellie Mae incorporates by reference "*all* previous paragraphs" in the Counterclaim. (*Id.* ¶ 102; *see also id.* ¶ 104 (referring to "*such acts*" by DocMagic without specifying the alleged "acts") (emphasis added).)

Ellie Mae's Section 17200 counterclaim thus fails for indefiniteness. As the Supreme Court has made clear, a claim that includes nothing more than a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Iqbal*, 129 S. Ct. at 1953. Courts regularly dismiss Section 17200 claims for this very defect. *See, e.g.*, *Bonner v. Redwood Mortgage Corp.*, No. C 10-00479 WHA, 2010 U.S. Dist. LEXIS 29969, at *22-23 (N.D. Cal. Mar. 29, 2010) (holding complaint was "plainly insufficient under *Iqbal* and *Twombly*" where it alleged only that "[b]y committing the acts described herein, defendants . . . have engaged in unfair business practice, causing injury and damages to Plaintiff and therefore violated [Section 17200]" without any supporting factual allegations (internal quotation omitted)); *Qureshi v. Countrywide Home Loans, Inc.*, No. C 09-4198 SBA, 2010 U.S. Dist. LEXIS 21843, at *20-21 (N.D. Cal. Mar. 10, 2010) (holding 17200 claim alleging defendants "committed unlawful, unfair and/or fraudulent business practices" without particular facts in support thereof was "precisely the type of 'unadorned, the-defendant-unlawfully-harmed-me accusation' that the Supreme Court has held is impermissible") (quoting *Iqbal*, 129 S. Ct. at 1949); *Nevis v. Wells Fargo Bank*, No. C 07-2568 MHP, 2007 U.S. Dist. LEXIS 65932, at *14-15 (N.D. Cal. Sept. 6, 2007) (dismissing 17200 claim for failure to allege "particular conduct, practices, or activities" that gave rise to claim).

**B.    Ellie Mae Fails to Allege Conduct That Threatens an Incipient Violation of Antitrust Law**

Ellie Mae alleges that DocMagic is engaged in "unfair competition in violation of" Section 17200 (Counterclaim ¶ 103), but it is unclear from the Counterclaim precisely what "unfair" acts Ellie Mae alleges give rise to this claim. One thing is clear, however: Ellie Mae fails to allege conduct that threatens an incipient violation of the antitrust laws, as required by the

California Supreme Court. In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), the court held that under California law, if a plaintiff claims to have suffered injury from a direct competitor's "unfair" act or practice and invokes Section 17200, the word "unfair" means "conduct that threatens an incipient violation of antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187. The California Supreme Court adopted this definition because it determined that a finding of unfairness to competitors should be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186-87.

Ellie Mae does not allege any threat of injury to competition, nor does it attempt to state any claims for violations of antitrust laws. Accordingly, its claim fails as a matter of law. *See*, *e.g.*, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152-54 (9th Cir. 2008) (citing *Cel-Tech* and affirming district court's dismissal of complaint); *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1225 (2d Dist. 2006) (affirming judgment on pleadings because complaint "alleges no conduct even remotely approaching a violation of an antitrust law or the policy or spirit of antitrust laws").

### C.    Ellie Mae Fails to Allege That It Lost Money or Property as a Result of DocMagic's Alleged Unfair Competition

California's Proposition 64 amended the state's unfair competition law to limit standing under Section 17200 to those who have suffered "injury in fact and ha[ve] lost money or property as a result of unfair competition." *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006). "Because remedies for individuals under the [unfair competition law] are restricted to injunctive relief and restitution, the import of the requirement is to limit standing to individuals who suffer losses of *money or property* that are eligible for restitution." *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir.) (emphasis added) (quoting *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 817 (2007)), *cert. denied*, 130 S. Ct. 400 (2009); *accord Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1348 (2009); *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009). A plaintiff who

1 cannot establish the requisite "lost money or property" for purposes of monetary relief may not

2 sue for injunctive relief. *Walker*, 558 F.3d at 1027.

3       Ellie Mae does not allege that it lost money or property as a result of DocMagic's alleged

4 acts of unfair competition. Ellie Mae's sole allegation regarding harm vaguely alleges "injury to

5 Ellie Mae's business" and that DocMagic's acts "have misled or confused and/or will mislead or

6 confuse consumers about the products or services that they received from DocMagic."

7 (Counterclaim ¶ 104.) Neither of these allegations establishes that Ellie Mae lost money or

8 property.[7] Accordingly, the Section 17200 claim should be dismissed for lack of standing. *See*

9 *Walker*, 558 F.3d at 1027 (affirming dismissal of Section 17200 claim due to lack of standing for

10 failure to establish requisite lost money or property); *Katz v. Cal-Western Reconveyance Corp.*,

11 No. d:09-04866-JF, 2010 U.S. Dist. LEXIS 13385, at *13-14 (N.D. Cal. Jan. 27, 2010) (granting

12 motion to dismiss Section 17200 claim where plaintiff did not allege loss of money or property).

13 **CONCLUSION**

14       For the foregoing reasons, the Court should dismiss Ellie Mae's first, second, third, fourth,

15 fifth, seventh, eighth, and ninth counterclaims.

16 Dated: June 14, 2010                     JAMES P. BENNETT
                                      JENNIFER LEE TAYLOR

17                                         STUART C. PLUNKETT
                                        JACQUELINE A. BOS

18                                         NATHAN B. SABRI
                                        MORRISON & FOERSTER LLP

19

20

21                          By:         /s/ Stuart C. Plunkett
                                     Stuart C. Plunkett

22                          Attorneys for Plaintiff
                         DOCMAGIC, INC.

23

24

25       [7] In other passages in the Counterclaim, Ellie Mae appears to allege harm resulting from delayed software updates, bug fixes, Ellie Mae's inability to notify its clients of downtime, and Ellie Mae's inability to provide its "usual level of superior customer service." (Counterclaim

26 ¶¶ 31-32, 41.) Not only do none of these allegations of harm establish that Ellie Mae lost money or property, Ellie Mae does not attempt to tie any of these allegations of harm to DocMagic's

27 alleged acts of "unfair" competition.

28