1  NOAH BRUMFIELD (SBN 203653)
   nbrumfield@whitecase.com
2  ELLEN MCGINTY KING (SBN 71490)
   eking@whitecase.com
3  JEREMY K. OSTRANDER (SBN 233489)
   jostrander@whitecase.com
4  **WHITE & CASE LLP**
   3000 El Camino Real
5  Five Palo Alto Square, 9th Floor
   Palo Alto, CA 94306
6  Telephone:  (650) 213-0300
   Facsimile:   (650) 213-8158
7
   Attorneys for Defendant/Counterclaimant
8  ELLIE MAE, INC.

9
                        UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN FRANCISCO DIVISION
12

13

14  DOCMAGIC, INC., a California          Case No. 3:09-CV-4017-MHP
    corporation
15                                        **DECLARATION OF RICHARD ROOF IN**
                   Plaintiff,             **SUPPORT OF ELLIE MAE INC.'S**
16                                        **MOTION FOR SUMMARY JUDGMENT**
         v.                               **ON THE FIRST, SECOND AND THIRD**
17                                        **CLAIMS FOR RELIEF IN THE SECOND**
    ELLIE MAE, INC., a Delaware           **AMENDED COMPLAINT**
18  corporation,
                                          Date:        December 27, 2010
19                 Defendant.             Time:        2:00 p.m.
                                          Courtroom:  15
20  AND RELATED COUNTERCLAIM
                                          Hon. Marilyn Hall Patel
21

22

23

24

25

26

27

28

1    I, Richard Roof, declare as follows:

2    1.    I am Senior Vice President of Ellie Mae, Inc. ("Ellie Mae"), with responsibility for

3    business development.  I have been employed by Ellie Mae since 1999 and have held the title of

4    Senior Vice President since approximately 2002.  Prior to becoming Senior Vice President for

5    business development, I was Vice President of business development.

6    2.    Unless otherwise indicated, the following facts are based on my personal

7    knowledge.  I would be competent to testify concerning the matters set forth herein if called upon

8    to do so.

9    **Ellie Mae's Encompass and ePass Connections with Third-Party Vendors**

10    3.    Among other things, Ellie Mae provides loan origination software known as

11    Encompass to mortgage loan brokers and mortgage loan bankers.  Ellie Mae also offers these

12    customers a closing document preparation service known as Ellie Mae Docs.  In addition, Ellie

13    Mae provides an Internet-based platform (described below) which allows Ellie Mae's licensees to

14    access the websites of providers of other mortgage-related service providers while remaining in

15    the Encompass software environment.  Throughout my employment with Ellie Mae, I have been

16    directly involved in negotiating with vendors of these other mortgage-related services regarding

17    their participation as vendors on Ellie Mae's Internet-based platform as well as negotiating other

18    business relationships with these vendors.

19    4.    Vendors that want to sell their services directly to Ellie Mae customers through

20    Ellie Mae's Internet-based platform can do so by entering into an Electric Bridge Agreement with

21    Ellie Mae that allows the vendor access to the Ellie Mae Network (also known as "ePASS").

22    ePASS is an Internet-based platform available only to Ellie Mae customers through which

23    vendors integrated into ePASS can directly sell their services to the Ellie Mae customers who

24    choose to use ePASS.

25    5.    Vendors that sign the Electronic Bridge Agreement and become integrated with

26    ePASS include providers of loan underwriting services, compliance and fraud detection services,

27    mortgage insurance services, appraisal services, and vendors of closing document preparation

28

- 1 -

1   services, among others.  Among other things, the Electronic Bridge Agreements establish the fees

2   to be paid by the vendor to Ellie Mae for each transaction conducted on ePass.  DocMagic, Inc.

3   ("DocMagic") is an example of a vendor of closing document preparation services.  The range of

4   partner-offered    services    available    through    ePASS    can    be    found    at

5   www.elliemae.com/lenders_vendors/partners_service.asp.   Attached hereto as Exhibit A is a true

6   and correct copy of a printout of this webpage.

7         6.       As an example, the other mortgage-related service providers on ePASS include 13

8   closing document preparation products from 10 vendors (including two of Ellie Mae's own

9   document preparation offerings).  Attached hereto as Exhibit B is a true and correct copy of a

10   printout from the Ellie Mae website showing all of the closing document preparation service

11   vendors that are currently available on ePASS.

12         **DocMagic's Discounted Access to ePASS**

13         7.       For several years, DocMagic was one of the closing document preparation vendors

14   that participated on ePASS.  DocMagic's earliest participation was governed by the terms of an

15   Electronic Bridge Agreement Between Ellie Mae and Participator, entered into by Ellie Mae and

16   DocMagic on November 24, 2003.   A true and correct copy of that agreement (the "DocMagic

17   Bridge Agreement") is attached hereto as Exhibit C. The DocMagic Bridge Agreement was

18   modified in September 2006.  A true and correct copy of Amendment Number One to Electronic

19   Bridge Agreement Between Ellie Mae and Participator is attached hereto as Exhibit D.  By its

20   terms as amended, the DocMagic Bridge Agreement was due to expire as of August 31, 2009.

21   Both the original and amended terms of the DocMagic Bridge Agreement applied to DocMagic's

22   provision of sets of closing documents, but not to any other DocMagic product or service.  Both

23   the original and amended terms of the DocMagic Bridge Agreement provided DocMagic with

24   discounted pricing for access to ePASS that was substantially less than the standard terms offered

25   to other closing document preparation vendors.

26         8.       During the period covered by the DocMagic Bridge Agreement, Ellie Mae and

27   DocMagic had a broader relationship that included, at various times, an Integration and ePASS

28   Business Center Agreement, a Strategic Partnership Agreement and a Reseller Agreement, in

Decl. of Richard Roof ISO Ellie Mae's
Motion for Summary Judgment.
Case No. 3:09-CV-4017-MHP

PALOALTO 106032 (2K)

1    which DocMagic agreed to provide Ellie Mae services beyond those included in the Electronic

2    Bridge Agreement.   In the context of that broader relationship, the original pricing of the

3    DocMagic Bridge Agreement was set at graduated rates for each transaction involving a set of

4    closing documents.  See Exhibit C at p. 12, ¶ 2(b).  The amended ePASS rates set in 2006 also set

5    graduated rates (Exhibit D at p. 7, ¶ 2) that were established in conjunction with termination of

6    the Strategic Partnership Agreement and concurrent entry into the Reseller Agreement, which was

7    entered into at the same time as the 2006 DocMagic Bridge Agreement.   Attached hereto as

8    Exhibit E is a true and correct copy of the Reseller Agreement (the "DocMagic Reseller

9    Agreement").

10
11
                     **Ellie Mae's Offer to Deal with DocMagic on the Same Terms Offered to and
                     Agreed to by DocMagic's Competitors**

12          9.       I understand DocMagic alleges that Ellie Mae began in the Spring of 2009 to craft

13    a strategy to monopolize the "closing document market" by blocking DocMagic's ability to sell to

14    Ellie Mae's Encompass customers by (i) unilaterally terminating the DocMagic Reseller

15    Agreement whereby Ellie Mae resold DocMagic's closing document services, and (ii)

16    conditioning the continued right to access Ellie Mae's proprietary ePASS network upon the

17    payment by DocMagic of a "non-negotiable" 600% price increase in the per transaction license

18    fee, an increase that allegedly "bears no relationship" to what Ellie Mae charges other closing

19    document vendors for access to ePASS.  These allegations are not correct.

20          10.      First, the termination of the DocMagic Reseller Agreement was mutual.   The

21    parties mailed their respective notices of termination within one day of each other.  The notice of

22    termination that Ellie Mae received from DocMagic was dated one day after the date that Ellie

23    Mae mailed its own notice of termination.  Attached hereto as Exhibits F and G, respectively, are

24    copies of the notice letters sent by Ellie Mae and by DocMagic within one day of each other.

25          11.      Second, Ellie Mae chose not to renew the DocMagic license to ePASS under the

26    then-existing terms of the DocMagic Bridge Agreement because DocMagic was receiving a very

27    favorable discount relative to other vendors that was no longer warranted given the parties'

28    mutual termination of the DocMagic Reseller Agreement.

- 3 -

Decl. of Richard Roof ISO Ellie Mae's
Motion for Summary Judgment.
Case No. 3:09-CV-4017-MHP

PALOALTO 106032 (2K)

1      a.     The three-year term of the amended DocMagic Bridge Agreement was due to

2             expire as of August 31, 2009.  By the spring of 2009, Ellie Mae was no longer

3             willing to allow DocMagic to remain on ePASS under the very favorable terms it

4             had enjoyed, at rates substantially less than those charged to other closing

5             document preparation vendors on ePASS.

6      b.     On May 21, 2009, I notified DocMagic of Ellie Mae's notice of intent to terminate

7             the DocMagic Bridge Agreement ("Notice").  I drafted the Notice to include a

8             statement indicating Ellie Mae's intent to renegotiate the terms of the ePASS

9             license at then-standard terms.

10     c.     Attached hereto as Exhibit H is a true and correct copy of the May 21, 2009 letter

11            that I sent to DocMagic's CEO, Don Iannitti.

12     d.     Ellie Mae's May 21 letter to DocMagic stated:  "We are taking this action because

13            the transaction fee amounts that you are currently paying are significantly

14            discounted from our normal fees.  If you would like to discuss this, please let me

15            know."

16     e.     I drafted this May 21 Notice, and the above quoted sentence in particular, as an

17            invitation to DocMagic to enter into negotiations with Ellie Mae on new terms.

18            The Notice effectively gave DocMagic three (3) months in which to do so, telling

19            Mr. Iannitti "[d]o not hesitate to contact me if you have any questions or

20            comments."

21     12.    Ellie Mae was willing to negotiate a new Electronic Bridge Agreement with

22  DocMagic, and I personally communicated Ellie Mae's willingness to do so on June 5, 2009,

23  approximately two weeks after the May 21 notice letter, during a conference call with Don

24  Iannitti and Bill Lambropoulos, the CEO and in-house counsel for DocMagic, respectively .

25     13.    During the June 5 call, I told Mr. Iannitti and Mr. Lambropoulos that Ellie Mae

26  could not continue with the ePASS relationship under the then-existing terms because, under the

27  pricing in the DocMagic Bridge Agreement, DocMagic was getting a very heavy discount off

28  Ellie Mae's standard price for ePASS closing document preparation vendors.  In response to an

- 4 -                          Decl. of Richard Roof ISO Ellie Mae's
                                                    Motion for Summary Judgment.
PALOALTO 106032 (2K)                                Case No. 3:09-CV-4017-MHP

1    inquiry from Mr. Iannitti, I told him that Ellie Mae's standard price was $6.00 per transaction for

2    closing documents.

3         14.    The DocMagic representatives indicated that they would consider this pricing and

4    get back to me.  However, neither during this June 5, 2009 conference call nor at any time since

5    then did DocMagic ever communicate a counter-offer or attempt to negotiate a lower price.  The

6    conversation on June 5, 2009 was the last time that I have ever heard from DocMagic regarding

7    pricing for a new Electronic Bridge Agreement.

8         **Ellie Mae's Standard ePASS Rate**

9         15.    Ellie Mae works with many vendors in a variety of service categories, including

10   closing document preparation services.  All vendors who wish to participate on ePASS are

11   required to execute an Electronic Bridge Agreement that defines the relationship between Ellie

12   Mae and the vendor, as well as their respective rights.  Ellie Mae maintains a list of standard

13   transaction fees that apply to all categories of vendors on ePASS.

14        16.    The Ellie Mae offer to deal at $6.00/transaction for closing document preparation

15   vendors was at the standard rate.  The $6.00/transaction fee has been the standard rate for that

16   vendor category for many years.

17        17.    The price list maintained by Ellie Mae requires payment of $6.00 per transaction

18   for closing document preparation vendors.  This price has remained unchanged for at least the last

19   three years or longer.  A true and correct copy of Ellie Mae's price list is attached at Exhibit I

20   (redacted with regard to services not at issue in this dispute).

21        18.    The $6.00 per transaction fee was not a new fee when Ellie Mae made the offer to

22   deal with DocMagic at $6.00 in the Summer of 2009.  The DocMagic Bridge Agreement entered

23   in November 2003 also reflected that $6.00/transaction was the standard transaction rate for

24   closing document vendors.  See Exhibit C at p. 12, ¶ 2.b.  There, the $6.00 fee per document set

25   was stricken from the fee schedule and the words "Revised Pricing for DocMagic" were inserted.

26   Even as recently as 2007 – two years before I drafted Ellie Mae's notice of its intent to terminate

27   the then-existing DocMagic Bridge Agreement and made the offer to renew the agreement at

28

- 5 -

Decl. of Richard Roof ISO Ellie Mae's
Motion for Summary Judgment.
Case No. 3:09-CV-4017-MHP

1   $6.00/transaction – Ellie Mae had been offering, and competitors to DocMagic had been

2   accepting, the $6.00 per transaction rate.

3         19.     For example, there are two closing document service vendors who entered into

4   new or amended Electronic Bridge Agreements in 2007.  In each case, Ellie Mae and the vendor

5   agreed that the closing document fee payable by the vendor would be $6.00 per transaction.

6         20.     Other closing document preparation vendors on ePASS also pay $6.00 per

7   transaction, the standard rate.  There are currently nine third-party closing document preparation

8   vendors who participate on ePASS:  Accurate Document Services; CoreLogic Document Services

9   (First American Nationwide Documents); DocsDirect (Schwartz & Associates); DocuTech; IDS,

10  Inc.; MRG Document Technologies (Middleberg, Riddle & Gianna); Peirson Patterson LLP;

11  ProClose (Mortgage Banking Systems); and Robertson & Anschutz.  See Exhibit A.  Of these,

12  eight vendors have a single contractual relationship with Ellie Mae, *i.e.*, their only contract with

13  Ellie Mae is an Electronic Bridge Agreement.  Seven of these eight vendors are required by

14  contract to pay Ellie Mae *at least* $6.00 per transaction on ePASS.

15        21.     The eighth vendor pays $5.00 per transaction, but is subject to a minimum

16  payment obligation of $1,500 per month under an amended agreement dated as of September

17  2006.

18        22.     The ninth closing document preparation vendor receives a pricing discount

19  because it has a much more complex, multi-agreement relationship with Ellie Mae and gives Ellie

20  Mae a preferential discount on services offered to Ellie Mae.  Its initial pricing for ePASS was

21  originally set in 2001 at 20% of gross revenue from ePASS transactions, which was equivalent to

22  approximately $6.00 or more per transaction, rather than an absolute dollar figure.  The rate for

23  that vendor was subsequently changed in 2006 in conjunction with the expansion of the

24  relationship to include a reseller relationship and settlement of a billing dispute.  Any discount

25  given to this vendor is offset by an equal, if not greater, net discount in prices paid by Ellie Mae

26  for services offered by the vendor.

27

28

Decl. of Richard Roof ISO Ellie Mae's
Motion for Summary Judgment.
Case No. 3:09-CV-4017-MHP

PALOALTO 106032 (2K)

1

**DocMagic's Claimed "Injury," if any, is Self-Inflicted**

2

     23.     I understand DocMagic claims that the ability to have a direct connection to Ellie

3

Mae's customer loan data through Ellie Mae's software is essential to DocMagic. This is not

4

reflected in DocMagic's actions.

5

     24.     Prior to the Summer of 2009, DocMagic generated most of its sales to Encompass

6

users through the reseller arrangement, as compared with sales through ePASS. Since DocMagic

7

mutually terminated the reseller agreement, DocMagic's loss of sales through the DocMagic

8

Reseller Agreement was self-inflicted.

9

     25.     Because DocMagic would not negotiate terms for a new Electronic Bridge

10

Agreement during the Summer of 2009, the DocMagic Bridge Agreement expired and DocMagic

11

no longer was a participant on ePASS.

12

**DocMagic Knew in the Summer of 2009 and Well Before This Litigation that
It Would Cease to Have Encompass Connectivity**

13

14

     26.     DocMagic has known since the Ellie Mae Notice given to DocMagic, dated May

15

21, 2009, that DocMagic would no longer have a license to connect to ePASS unless it negotiated

16

a new agreement.

17

     27.     By the end of August 2009, DocMagic's ePASS agreement had terminated without

18

any effort by DocMagic to renegotiate a continuing agreement.

19

     I declare under penalty of perjury under the laws of the United States that the foregoing is

20

true and correct.

21

     Executed this 19th day of November, 2010.

22

23

                     /s/ Richard Roof

24

25

26

27

28

                        - 7 -

Decl. of Richard Roof ISO Ellie Mae's
Motion for Summary Judgment.
Case No. 3:09-CV-4017-MHP

1    **ATTESTATION OF E-FILED SIGNATURE**

2       I, Ellen McGinty King, am the ECF User whose ID and Password are being used to file

3 this Declaration.  In compliance with General Order 45, X.B., I hereby attest that Richard Roof

4 has concurred in this filing.

5

6 Dated:  November 19, 2010            /s/  Ellen McGinty King
                                              Ellen McGinty King

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -            Decl. of Richard Roof ISO Ellie Mae's
Motion for Summary Judgment.
Case No. 3:09-CV-4017-MHP

PALOALTO 106032 (2K)